## THE PEOPLE OF THE STATE OF NEW YORK *ex rel.* BROOKLYN CITY RAILROAD ·COMPANY *v.* NEW YORK STATE BOARD OF TAX COMMISSIONERS.

ERROR TO· THE· SUPREME COURT ·OF· THE STATE OF NEW YORK.

No. 79.   Argued April 17, 18, 19, 1905.—Decided May 29, 1905.

A license fee is a charge for the privilege of carrying on a business or occupation and is not the equivalent or in lieu of a property tax, and a provision in the grant of a franchise for a license fee does not, in the absence of express stipulations of exemption, relieve the property employed ·in the business from the ordinary burdens of property taxation and amount to a contract of exemption from further taxation, within the impairment of contract clause of the Federal Constitution.

The legislation challenged in this case, being in terms an amendment of the general tax law of New York and subject to the provisions of that law in respect to notice and review by certiorari of the action of the assessing board, is not obnoxious to the charge of a lack of due process of law; nor is due process shown to be wanting by a failure to require a return of the valuation of the franchise held by a corporation separately from that of the tangible property held under the franchise.

THIS case, like the preceding, involves the special franchise tax law of New York. The facts are these: On December 22, 1853, the relator was authorized by the city of Brooklyn to construct, maintain and operate street surface railroads upon specified streets, and required to enter into a good and sufficient bond conditioned for the faithful performance of all the terms and stipulations in the resolutions granting the authority. On December 30 of that year a bond in the sum of $200,000 was duly executed by the relator and that has ever since been kept in force. The terms and stipulations as to the construction and operation of the railroad need not be mentioned. The resolutions contained these further provisions.

"The rates of fare for each passenger and the license fee for

each car to be paid annually into the city treasury shall be on the respective lines above mentioned:

"1. Furnam street route, fare not to exceed five cents, license fee, $50.   2. Court street route, fare not to exceed four cents, license fee, $20.   3. Powers street route, fare not to exceed five cents, license fee, $20.   4. Flatbush avenue route, fare not to exceed five cents, license fee, $20.   5. Fulton avenue route, fare not to exceed four cents, license fee, $20.   6. Myrtle avenue route, fare not to exceed four cents, license fee, $20.   7. Sands street route, fare not to exceed five cents, license fee, $10.   8. Front street route, fare not to exceed five cents, license fee, $10."

This action of the city of Brooklyn was validated by the state legislature. Other contracts were made by the city of Brooklyn with other companies. Those companies were subsequently consolidated with the relator, which, on the first of January, 1900, held forty-five similar contracts with the municipalities for the construction, maintenance and operation of street surface railroads in the present boroughs of Brooklyn and Queens. Some of these contracts required the annual payment of a certain percentage of the gross receipts. Subsequently, under due legislative authority, the contract arrangements between the relator and the city were modified in respect to the amount of the annual license fee. The statute authorizing the modification contains this clause:

"The said license fees shall be taken in full satisfaction for the use of the streets or avenues, but the same shall not release said company from any obligations required by law to keep such streets or avenues, or any part thereof, in repair, which said obligations and the contracts, laws or ordinances creating and enforcing the same are hereby continued in full force and operation."

*Mr. Charles A. Collin*, with whom *Mr. William F. Sheehan* was on the brief, for plaintiff in error.[1]

---

[1] For abstract of argument see *ante*, p. 23.

*Mr. Julius M. Mayer,* Attorney General of the State of New York, and *Mr. Louis Marshall* for defendant in error.[1]

MR. JUSTICE BREWER, after making the foregoing state-ment, delivered the opinion of the court.

Do these license fees stand as an equivalent for property taxes so that a stipulation in respect to them relieves the property from liability to ordinary taxation? This certainly would not be the general rule. A license fee is understood to be a charge for the privilege of carrying on a business or occupa-tion, and is not the equivalent or in lieu of a property tax. Take the vast volume of occupations which are subject to licenses from either the Nation or the State. Who supposes that in the absence of some express stipulation the fees charged for those licenses operate to relieve the property employed in the business from the ordinary burdens of property taxation? The precise question as to the effect of an ordinance imposing a license fee for cars used on a street railroad was before the Court of Appeals in *Mayor &c.* v. *Broadway &c. R. R. Com-pany,* 97 N. Y. 275, in which, on page 282, the court said:

"The contract of the defendant arises from the provisions of its charter by which it agrees to pay a certain sum reserved therein in consideration of the privileges conferred thereby. It is neither a tax, nor is it a penalty, and hence the technical rules as to penal actions or suits to recover a tax which are invoked by the appellant have no application."

Further, in the statute modifying the license fees, which was accepted by the relator, it was expressly stated that they should "be taken in full satisfaction for the use of the streets or avenues." Clearly, therefore, the fees being imposed for a specific purpose, they cannot exempt the relator's property from the tax imposed by the special franchise tax law.

It is further objected that there was a failure of due process of law in that the special franchise tax law did not indicate

---

[1] For abstract of argument see *ante,* p. 24.

any principle or method for ascertaining the value of the intangible property included in the special franchise, and that the state board did not make any separate valuation of the tangible property, and did not adopt or proceed upon any principle or method in valuing the totality of the tangible and intangible property, but necessarily indulged in mere speculation and guesswork instead of exercising judgment in making the valuation.

We are of opinion that this objection is without merit. The sections relating to the taxation of special franchises were enacted as amendments to and part of the general tax law of the State, and are to be construed accordingly. By one section the valuation is to be determined by the state board of tax commissioners. By another the owner of every such franchise is required to make a written report to the state board, containing a full description of the franchise, a copy of the special grant, ordinance or contract under which it is held, or, if possessed or enjoyed under a general law, a reference to such law, a statement of any condition, obligation or burden imposed upon the franchise, together with such other information as the state board may require; and that board is authorized to require, from time to time, further reports containing information upon such matters as it may specify. Not only that; after making the valuation the state board is required to give notice in writing to the owner of the franchise, stating the valuation, and that on a day specified, not less than twenty nor more than thirty days thereafter, it will meet to hear and determine any complaint against such assessment, and this notice must be served at least ten days before the day fixed for the hearing. At the hearing the owner may file a statement under oath specifying the respect in which the valuation is incorrect; testimony may be taken and a full investigation had. Another section provides for a review of the assessment by writ of certiorari. These provisions were all complied with. Notice was given to the relator, and on the day fixed for the hearing it appeared and filed its objections.

Thereafter it took out a writ of certiorari to review the proceedings of the tax board. Surely by this due process of law was secured. It will not do to say that the valuation of a piece of property is mere guesswork. True, it is often largely a matter of opinion, and mathematical exactness is not always possible. Various elements enter into and affect an opinion respecting the value of a given piece of property, and all that can be required is that the assessing board exercise an honest judgment based upon the information it possesses or is able to acquire. That valuation is of the property as a totality, and it is unnecessary in making an assessment to disintegrate the various elements which enter into it and ascribe to each its separate fraction of value. Oftentimes the combination itself is no inconsiderable factor in creating the value. We are of the opinion that the relator was not denied due process of law in the valuation and assessment of its franchise.

We see nothing else in the record calling for notice, and the judgment of the Supreme Court of New York is

*Affirmed.*