JACOBS *v.* SCHMIDT.

1. APPRAISAL — ARBITRATION — CORPORATIONS — CONTRACT FOR APPRAISAL MAY NOT BE REVOKED BY ONE OF THE PARTIES.

An agreement in writing not executed in conformity with 3 Comp. Laws 1915, § 13646 *et seq.*, reciting that defendants would sell and plaintiff would buy certain corporate

stock at a price to be fixed by one man chosen by plaintiff, one by defendants, and the third to be chosen by the two, was a contract providing for an appraisal and not an arbitration, and could not be set aside or revoked at the will of the plaintiff.[1]

2. SAME—FRAUD—EVIDENCE—SUFFICIENCY.

Plaintiff's claim that his signature to said agreement was procured by fraud and that he did not intelligently enter into it, *held*, not sustained by the proofs.[2]

3. SAME—THAT THIRD APPRAISER HAD BUSINESS RELATIONS WITH ANOTHER APPRAISER DID NOT DISQUALIFY HIM—ESTOPPEL.

Where the name of the third appraiser was suggested by the appraiser selected by plaintiff, with whom he had business relations, the fact that he also had business relations with the appraiser selected by defendants and with their attorneys did not disqualify him from acting, and, in view of the fact that plaintiff recognized the validity of the proceedings after learning of said business relations, his contention that the award of the appraisers would be a nullity is without merit.[3]

4. SAME—VALIDITY OF PROCEEDINGS.

Where the claims of both parties, prepared by their attorneys, were presented in writing, the fact that defendants' claims were more forcefully presented than were plaintiff's, is no reason for disregarding their rights.[4]

5. SAME — PLAINTIFF NOT DEPRIVED OF RIGHT TO PRESENT HIS CASE.

Plaintiff's contention that he was deprived of the right of presenting his side to the appraisers because they refused to hear him at a time when neither defendants or their attorneys were present is without merit, where a time was fixed for a hearing when both parties could be present.[5]

6. SAME—DELAY CAUSED BY INJUNCTION WILL NOT DEFEAT RIGHT TO COMPLETE APPRAISAL.

That the time for completing the appraisal fixed in the contract has expired, will not defeat defendants' right to a completion of the appraisal, where the delay was occasioned by an injunction obtained by plaintiff.[6]

[1]Arbitration and Award, 5 C. J. § 4; [2]Contracts, 13 C. J. § 979; [3]Appraisal or Appraisement, 4 C. J. p. 1408; [4]Id., 4 C. J. p. 1408; [5]Id., C. J. p. 1408; [6]Id., 4 C. J. p. 1408.

Appeal from Wayne; Brown (William B.), J., presiding.    Submitted April 7, 1925.    (Docket No. 2.) Decided May 14, 1925.

Bill by Abraham Jacobs against J. Harold Schmidt and others to set aside an agreement for an appraisal, and for an injunction.    From a decree for defendants, plaintiff appeals.    Affirmed.

*Routier, Nichols & Fildew* (*George E. Nichols,* of counsel), for plaintiff.

*Denby, Kennedy & O'Brien,* for certain defendants.

FELLOWS, J.    There are a large number of defendants in this case, but most of them are nominal and the real controversy is between plaintiff and Dorothy Waters Fitzgerald, Charles L. Bertch and Cora M. Bertch, who will be hereafter referred to as defendants.    These parties together with Hazel McGregor, plaintiff's secretary, own all the stock of Associated Merchants Company, defendants owning 1,500 shares, plaintiff 950 shares and Hazel McGregor 50 shares. . The company has a lease for a period of years of an apartment house owned by plaintiff and for some time has so successfully conducted it under the management of Mrs. Fitzgerald as to return very substantial dividends.    In considering the claims of parties, it will be necessary later to go more fully into detail, but for the present it will suffice to state that the plaintiff and defendants entered into an agreement which recited that defendants were willing to sell and plaintiff was willing to buy defendants' stock in the company but were unable to agree upon the price to be paid; and agreeing that plaintiff would buy and defendants would sell such stock, the price to be fixed by one man chosen by plaintiff, one by defendants, and the third to be chosen by the two or in the event they were unable to agree upon a man, one was to

be chosen by the presiding judge of the Wayne circuit court.    Plaintiff selected John Harold Schmidt, defendants Walter V. Brandon, and at Mr. Schmidt's suggestion, Claude M. Harmon was selected as the third.    Before they had arrived at a final result this bill was filed seeking to set aside the agreement and for other relief and an injunction was issued restraining Messrs. Schmidt, Brandon and Harmon from further proceeding with their duties.

In considering the questions involved we shall take them up in what we deem their logical order rather than their degree of importance.    This necessitates first considering the character of the agreement.    It was not executed in conformity with 3 Comp. Laws 1915, § 13646 *et seq.*, and plaintiff insists that it is an agreement for a common-law arbitration while defendants insist that it is an agreement for an appraisal.

"The settlement of controversies by arbitration is an ancient practice at common law.    In its broad sense it is a substitution, by consent of parties, of another tribunal for the tribunals provided by the ordinary processes of law; a domestic tribunal, as contradistinguished from a regularly organized court proceeding according to the course of the common law, depending upon the voluntary act of the parties disputant in the selection of judges of their own choice.    Its object is the final disposition, in a speedy and inexpensive way, of the matters involved, so that they may not become the subject of future litigation between the parties."    5 C. J. p. 16.

"Appraisal or Appraisement.    A valuation of, or an estimation of the value of, property; the valuation of goods and chattels or real estate by two persons of suitable qualifications, fair, impartial, and disinterested, having knowledge of the property to be appraised, and with intelligence to ascertain its value after inspection and inquiry on the subject."    4 C. J. p. 1408.

This court has recognized the difference between

an arbitration and an appraisal.   *Noble* v. *Grandin*,
125 Mich. 383.    In the instant case the sole function
to be performed by the three men selected was the
fixing of the value of the stock; they were not to ad-
just disputed claims between the parties.    The con-
tract provided for an appraisal, not an arbitration,
and could not be set aside or revoked at the will of
the plaintiff.    *Noble* v. *Grandin, supra.*

Plaintiff claims that his signature to the agreement
was procured by fraud and that he did not intelligently
enter into it.    He claims that defendants' attorney
prepared it and represented to him that it would have
no binding effect and that if he would sign it matters
would be settled up without proceeding under it.    This
is emphatically denied by defendants' attorney.    We
deem it but proper to say at this point that plain-
tiff's sworn bill filed in this case contained so many
charges that are unsupported by proof that we feel
constrained to scrutinize plaintiff's testimony with an
unusual degree of care.    We are satisfied by the
convincing proof and the circumstances surrounding
the transaction which are overwhelmingly with de-
fendants that no fraud was perpetrated on plaintiff
in procuring the contract and that it was entered
into advisedly by him.    Beyond any doubt the facts
surrounding the making of this contract are these:
There was disagreement between the parties; plain-
tiff's son is an attorney and we are satisfied notwith-
standing claims to the contrary that he represented
his father through this entire transaction; he had
several conferences with defendants' attorney and
finally they sat down together and jointly dictated
the agreement.    After it was finished plaintiff was
not prepared to sign it; he had besides his son an-
other attorney employed, a man of high standing and
unquestioned ability; he submitted the contract to him
and retained it in his possession for upwards of ten
days when he finally signed it; to effectuate the agree-

ment defendants were required to deposit their stock in escrow with the Union Trust Company and plaintiff was required to deposit his certified check for $1,000 with the Trust Company; this he did. Plaintiff is a man of large affairs whose business is "rediscounting mortgages and notes on contracts," and it is unbelievable that he did not know what he was signing or that any fraud was perpetrated to procure his signature.

The plaintiff selected Mr. Schmidt as one of the appraisers. He had been a tenant of plaintiff for a couple of years, and was engaged in the real estate business. Defendants' selection was Mr. Brandon. He is president of the Bankers Trust Company. It does not appear that he had any acquaintance with defendants before his selection and was named at the suggestion of their attorney. Mr. Schmidt suggested Mr. Harmon with whom he had been acquainted for a number of years and with whom he had had business relations for the third member. Mr. Harmon had been president of the Detroit Real Estate Board and was at the time chairman of its appraisers committee. He had had a wide experience in real estate matters. He was and had been for some time a member of the board of directors of the Bankers Trust Company, consisting of eighteen members. Two members of the firm of attorneys employed by defendants were directors of the Trust Company, and the attorney having active charge of the case had a few shares of its stock. They were not attorneys for the Trust Company. It is the claim of plaintiff that he did not know that Brandon and Harmon were on the board of directors together when they were selected although he learned of that fact soon after. Mr. Schmidt also claims he did not know of this fact, and it was claimed by plaintiff that Harmon for this reason was disqualified from acting as an appraiser. It developed on the hearing that Mrs. Bertch

had a loan at the Bankers Trust Company secured by a mortgage. The amount of it does not appear, nor is it claimed that the security was not ample or that either Brandon or Harmon had anything to do with making it. She was not an active participant in the proceedings, the business pertaining to the appraisal being entirely conducted by Mrs. Fitzgerald. This loan is noted and commented on by plaintiff's counsel but the main contention in the case centers around the claim that Harmon was disqualified by reason of his relations with Brandon and the fact that Mr. Denby and Mr. O'Brien were also members of the board with him. No doubt all the parties were entitled to impartial, disinterested appraisers. But to follow plaintiff's contention would require us to assume, and assume in advance of a finding by the appraisers, that defendants' attorneys would unduly influence Brandon and he in turn would unduly influence Harmon to the detriment of plaintiff's rights. The high standing of the attorneys and the high standing of Mr. Brandon and Mr. Harmon, as appears from this record, forbids this assumption. Had this been a trial in court and had Mr. Brandon and Mr. Harmon been called as jurors, they could not have been successfully challenged for cause and it is doubtful if even a peremptory challenge would have been exercised. Had they not been restrained, we are convinced that the three appraisers, all men of high standing, would have reached a unanimous result that would have been fair to all the parties. Plaintiff thought it eminently proper to select as one of the appraisers Mr. Schmidt, a man with whom he had business relations, who had been his tenant for two years, and Mr. Schmidt thought it eminently proper to suggest Mr. Harmon with whom he had business relations, but plaintiff now insists that the selection of appraisers who have business relations with defendants' attorneys would entirely vitiate their pro-

ceedings and render any award made by them a nullity. However, after he had learned of these relations on two occasions he recognized the validity of these proceedings by procuring an adjournment of the hearings, one on account of his attorney and the other on account of his own absence from the city.     His contention is without merit.     Courts should encourage the settlement of differences without resort to litigation and should not discourage men of experience and high standing from serving as jurors, arbitrators and appraisers.

At the first meeting of the appraisers Mr. Schmidt presented a memorandum stating the plaintiff's viewpoint and contention; Mr. Brandon presented a memorandum stating defendants' viewpoint and contention. That prepared by defendants' attorney was more elaborate than that prepared for plaintiff, but defendants' counsel is not to be criticized nor his clients' rights disregarded because he devoted skill to the task in hand and carefully prepared a statement showing the contention of his clients and the figures upon which such contention was based; the memorandum prepared by him set forth the claims of defendants; it contained figures showing the income of the corporation; an audit of the company's books later procured by plaintiff established the correctness of these figures.     In view of the fact that the claims of both parties were presented in writing, we do not perceive that defendants' attorney transcended his duty to his clients or to the appraisers by presenting as forcefully as he could his clients' claim.     Neither defendants nor their attorney appeared at this meeting.     Plaintiff did appear and asked to be heard at that time.     The appraisers declined to hear his side of the case in the absence of the other parties and fixed the next day for a hearing when both parties could be present. Plaintiff insists that he was deprived of presenting his contention, which right was fixed in the contract.

But we think the appraisers pursued an orderly procedure.    Both parties should be permitted to be present and both should be permitted to present their respective contentions and the orderly way required the presence of both sides at the same time.    After plaintiff left the meeting the appraisers considered and all of them tentatively agreed upon some of the elements going to make up the value of the stock but no final decision was reached and it was understood that both parties should be fully heard before a final appraisal was arrived at.    After this first adjournment there were other adjournments, some due to absence from the city of some of the appraisers, and as before noted, two for the accommodation of the plaintiff.    Before a result had been reached the appraisers were restrained from further acting.

The time for completing the appraisal fixed by the contract and by the agreement for adjournments has, of course, long since expired.    The delay has been occasioned by the injunction obtained by plaintiff.    This does not defeat the right of defendants to a completion of the appraisal.    The appraisers or a majority of them will fix a day of hearing and give notice to all interested parties who will be given full opportunity to be heard, after which the appraisers will fix the value of the stock.

The decree will be affirmed, with costs of this court and with the modification above noted made necessary by the delay resulting from this litigation.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.