505 P.2d 1237

CITY OF ROSWELL, a New Mexico Municipal Corporation, City of Las Vegas, a New Mexico Municipal Corporation, and New Mexico Municipal League, a non-profit Corporation, Appellants,

v.

NEW MEXICO WATER QUALITY CONTROL COMMISSION, Appellee.

MOLYBDENUM CORPORATION OF AMERICA, Appellant,

v.

NEW MEXICO WATER QUALITY CONTROL COMMISSION, Appellee.

Nos. 795, 800.

Court of Appeals of New Mexico.

Nov. 22, 1972.

Rehearing Denied Dec. 27, 1972.

Certiorari Denied Feb. 6, 1972.

Dean S. Zinn, Zinn & Donnell, Santa Fe, for appellants in No. 795.

John T. Watson, Watson, Stillinger & Lunt, Santa Fe, for appellants in No. 800.

David L. Norvell, Atty. Gen., Thomas L. Dunigan, Asst. Atty. Gen., Douglas W. Fraser, Agency Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

HERNANDEZ, Judge.

This is an appeal from the action of the New Mexico Water Quality Control Commission's adoption of two regulations.

On August 27, 1971, the Commission adopted regulation No. 4 which prohibits the discharge of effluent into water, (water as defined by the Water Quality Act, § 75–39–2(G), N.M.S.A.1953 (Repl.Vol. 11, pt. 2), unless the effluent conformed to quality standards set forth in the regulation. The Commission also adopted regulation No. 6 prohibiting the discharge of certain identified minerals into water in quantities greater than those set forth.

The appellants challenge these regulations on two points: *First,* that there was no compliance with the New Mexico Environmental Quality Control Act (NMEQCA), §§ 12–20–1 through 12–20–7, N.M.S.A.1953 (Repl.Vol. 3, Supp.1971) prior to the adopting of regulations No. 4 and 6; *Second* that "Regulations 4 and 6 are arbitrary and capricious, not reasonably related to the prevention or abatement of water pollution and otherwise not in accordance with the law in that: A. The regulations are not reasonably related to the prevention and abatement of water pollution. B. The regulations are arbitrary and capricious. C. The regulations go beyond lawful legislation." This appeal is made pursuant to § 75–39–6, N.M.S.A.1953 (Repl.Vol. 11, pt. 2, Supp.1971) of the Water Quality Act which provides in part:

"C. Upon appeal, the court of appeals shall set aside the regulation only if found to be:

(1) arbitrary, capricious or an abuse of discretion;

(2) not supported by substantial evidence in the record or reasonably related to the prevention or abatement of water pollution; or

(3) otherwise not in accordance with law."

As to point one the Appellee maintains it was not the intention of the legislature that it be subject to NMEQCA and that if it were made subject to it that this "would, in effect, suspend, amend, or modify" its authority to act pursuant to its specific statutory mandate. Furthermore the provisions of NMEQCA "do not rationally apply to agencies or programs whose chief functions are regulation of the environment." Appellee's mandate is set forth in § 75–39–4, N.M.S.A.1953 (Repl.Vol. 11, pt. 2, Supp.1971) of the Water Quality Act and the pertinent parts for our purposes read as follows:

"The commission: . . . B. Shall adopt a comprehensive water quality program; C. Shall adopt water quality standards as a guide to water pollution control; D. Shall adopt, promulgate and publish regulations to prevent or

abate water pollution in the state or in any specific geographic area or watershed of the state or in any part thereof, or for any class of waters. . . ."

█ First, let us say that we see no apparent conflict with this mandate and the requirements of NMEQCA. Further, there is no specific requirement in Appellee's mandate that it consider to the fullest extent possible the environmental consequences of its action. We can conceive of Appellee in all good faith adopting a regulation governing the effluent quality of sewage so restrictive that municipalities would turn to methods other than those currently used to dispose of it which would have adverse environmental consequences far more serious than some pollution of the waters of the state. We can also conceive that such an action would bring Appellee in direct conflict with other agencies of the state, and who would resolve the resulting impasse? The only agency in a position to resolve such matters is the agency with the overall responsibility and that is the Council on Environmental Quality.

The pertinent provisions of the NMEQCA § 12–20–1, supra, are as follows:

"The purpose of this act is to:

A. declare a state policy which will encourage productive and enjoyable harmony between man and his environment, promote efforts to prevent or eliminate damage to and improve the environment and biosphere and stimulate the health and welfare of man;

B. enrich the understanding of New Mexico's ecological systems and natural resources and enhance the appreciation of their conservation and wise management; and

C. establish a council on environmental quality."

"Section 12–20–6.—The legislature authorizes and directs that, *to the fullest extent possible,* the policies, regulations and laws of the state and *any state agen-*

*cy or department* shall be interpreted and administered in accordance with the policies set forth in this act [12–20–1 to 12–20–7], and that *all agencies of the state shall*:

A. utilize a systematic, inter-disciplinary approach which will ensure the integrated use of the natural and social sciences and the environmental design arts in planning and making decisions which may have an impact on man's environment;

B. identify and develop methods and procedures, in consultation with the council on environmental quality, which will ensure that presently unquantified amenities and values may be given appropriate consideration in making decisions together with economic and technological considerations;

C. include in every recommendation or report on proposals for legislation and other major state actions significantly affecting the quality of the human environment a detailed statement by the responsible official on:

(1) the environmental impact of the proposed action;

(2) any adverse environmental effects which cannot be avoided, should the proposal be implemented;

(3) alternatives to the proposed action;

(4) the relationship between local and short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and

(5) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented; and

D. assist the council on environmental quality." [Emphasis ours]

■ This language in our opinion does not require interpretation. "In interpreting a statute the intent is to be first sought in the meaning of the words used, and when they are free from ambiguity and doubt and express plainly, clearly and distinctly the sense of the legislature, no other means of interpretation should be resorted to." George v. Miller & Smith, 54 N.M. 210, 219 P.2d 285 (1950).

■ In clear precise terms it makes environmental protection a part of the mandate of every agency or department and makes every such agency or department subject to its provisions. Appellee contends that to elevate this section "to the status of a condition precedent to the exercise of an agency's regulatory functions would, in effect, suspend, amend, or modify the authority of an agency to act pursuant to its specific statutory mandate pending performance of the obligations imposed." That is precisely what the legislature intended. This act requires that every agency or department consider, to the fullest extent possible under its statutory mandate, the effect that its action might have on the environment. Therefore, an agency or department is exempt from compliance only when there is a clear conflict of statutory mandate and then only to the extent of the conflict.

■ Appellee further maintains that all this act requires is that agencies "be alert to and mindful of new technological developments and will seek to quantify environmental values in order that their consideration and evaluation may be more reliable and complete". That is to say that all that is required is that an agency keep environmental matters in mind. Such is not the case. The requirements are strict and demanding. "To the fullest extent possible" throughout the decision-making process agencies must consider the environmental consequences of their proposed action. It even goes so far as to prescribe the method of analysis and then to insure compliance it provides for a detailed impact statement by the responsible official.

NMEQCA is closely patterned after the National Environmental Policy Act, 42 U. S.C. § 4321 (1970), which has been characterized as the most important legislative act of the decade, and also as our "environmental constitution". It was surely intended that on the state level NMEQCA would fulfill as important a role and have as profound an impact as the national act.

■ From the foregoing discussion, it follows that the Water Quality Control Commission is subject to the provisions of § 12–20–6, supra. The applicability of § 12–20–6, supra, does not suspend, amend or modify the authority of the Water Quality Control Commission. It does add an additional requirement in the exercise of the Commission's authority. In so holding, we have rejected the contention that § 12–20–6, supra, does not apply to environmental protection agencies and also rejected the contention that the Water Quality Act is in conflict with § 12–20–6, supra. See Calvert Cliffs' Coord. Com. v. United States A. E. Com'n, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971).

We acknowledge that at the time appellee adopted the regulations in question the Council on Environmental Quality had not yet been appointed so that even if it had wished to comply with the provisions of the NMEQCA it could not have done so. The situation has been rectified and the appellee should now comply.

The situation we encounter in trying to review point two was succinctly stated in Eastern-Central Assn. v. United States, 321 U.S. 194, 64 S.Ct. 499, 88 L.Ed. 668 (1944).

"Upon a matter of such consequence and complexity, our function in review cannot be performed without further foundation than has been made.

We do not mean by this to imply that the result the Commission has reached would not be sustained if a sufficient basis were supplied in the record.

We do not undertake to tell the Commission what it should do in this case. That is not our function. We only require that, whatever result be reached, enough be put of record to enable us to perform the limited task which is ours."

 This record reveals only the notice of the public hearing, the testimony of the various experts and others, some exhibits and the regulations. We have no indication of what the Commission relied upon as a basis for adopting the regulations. As was stated in McClary v. Wagoner, 16 Mich.App. 326, 167 N.W.2d 800 (1969), "We need to know the path the board has taken through the conflicting evidence. The appeal board should indicate the testimony adopted, the standard followed and the reasoning it used in reaching its conclusion." These regulations are conclusions without reasons.

There are some very practical reasons for this.

2 Davis Administrative Law Treatise, § 16.05 (1958): "The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." In making regulations, § 75–39–4(D), supra, states the Water Quality Control Commission ". . . shall give weight it deems appropriate to all facts and circumstances . . ." including six categories stated in that statute. We cannot effectively perform the review authorized by § 75–39–6, supra, unless the record indicates what facts and circumstances were considered and the weight given to those facts and circumstances. We do not hold that formal findings are required. We do hold the record must indicate the reasoning of the Commission and the basis on which it adopted the regulations. The regulations were not adopted in accordance with law. Accordingly, the regulations are set aside.

Remand for proceedings consistent with this opinion.

It is so ordered.

WOOD, C. J., and HENDLEY, J., concur.