549 P.2d 1074

**PETERSON PROPERTIES, DEL RIO PLAZA SHOPPING CENTER,**
Appellant,

v.

**VALENCIA COUNTY VALUATION PROTESTS BOARD, Appellee.**

**No. 2245.**

Court of Appeals of New Mexico.

April 20, 1976.

Lawrence H. Hill, Civerolo, Hansen &
Wolf, Albuquerque, for appellant.

Toney Anaya, Atty. Gen., John C. Cook and Joseph T. Sprague, Property Tax Department Asst. Attys. Gen., Santa Fe, for appellee.

### OPINION

SUTIN, Judge.

Taxpayer appealed an order of the Valencia County Valuation Protests Board that no change be made in the valuation records of the county assessor on taxpayer's property for the year 1975. The assessment appealed from involves only that assessment levied against the land. The improvement assessment is not in litigation. We affirm.

A. *Facts at Hearing and Decision*

Taxpayer owns about 8½ acres of land in Belen, Valencia County, New Mexico, upon which Del Rio Shopping Center was built. Taxpayer's market valuation was $92,535.00, which was the purchase price paid for the land in 1974. The county assessor's market valuation for 1975 was $371,653.00 or $1.00 per square foot.

Taxpayer offered to show " * * * a valuation in Albuquerque, New Mexico, for a comparable size property with a shopping center of like dimensions valued at full value after all construction was finished." Taxpayer did not seek to state the location, size or valuation of the land, as distinguished from the improvements, of the Albuquerque property. The board disallowed the offer because it was not market value.

The county assessor established: (1) That sales in the downtown area of Belen indicated that land was worth $2.00 a square foot. (2) That taxpayer's land was worth at least one-half per square foot of what it would be worth in the downtown area. This was based on sales of land made. (3) That a tract of land across the street from Del Rio, approximately 10,000 square feet, sold in 1974 for $15,000.00 or $1.50 per square foot. (4) That the sale of land, containing a house, adjacent to this tract, with 20,000 square feet, sold for $20,000.00 or $1.00 a square foot. (5) That a lease agreement equated at $1.10 per square foot. (6) That the reasoning among appraisers is that the purchase of a large portion of land will cost fairly less than the purchase of a small tract of land.

The board ordered that no change be made in the valuation records of the county assessor.

B. *The board's ruling on evidence did not deny taxpayer due process.*

█ Del Rio contends that the board's exclusion of comparable land values denied it due process. It relies on *Matter of Protest of Miller*, 88 N.M. 492, 542 P.2d 1182 (Ct.App.1975), cert. issued on other grounds, March 22, 1976. In this case we said:

> In each case, the county assessor appraised the value of the taxpayer's property. The method by which a valuation was assessed on each taxpayer's property is unknown. [542 P.2d at 1185].

In the instant case, the method of valuation is known. It was based upon a comparable sale of land adjacent to the Del Rio property, as well as evidence of other appraisal techniques.

In *Matter of Protest of Miller*, the "New Mexico Property Tax Code" was not then in effect and was not applicable. Section 72–29–5(B), N.M.S.A.1953 (Special 1974 Supp.) of this Code provides:

> Unless a method of valuation for a particular kind of property is specified under Sections 72–29–9 through 72–29–21 NMSA 1953, and except as otherwise directed in this subsection, *the market value of property as reflected by sales of comparable property and the application of generally accepted appraisal techniques shall be· its value for property taxation purposes*. However, when no market value can reasonably be ascertained for property, the market value method of valuation shall not be used, but methods of valuation in general use and authorized by department regulation shall be used to determine value for

property taxation purposes. [Emphasis added]

This method of valuation was amended in 1975, effective January 1, 1976. ° Laws 1975, ch. 165, § 2.

Section 72–29–5(B), supra, fixes two methods of determining market value: (1) sales of comparable property *and* (2) the application of generally accepted appraisal techniques. The taxing authority complied with these methods. The taxpayer did not.

Taxpayer's offer of evidence of a *valuation* of comparable property was not relevant. *El Paso Electric Company v. Landers,* 82 N.M. 265, 479 P.2d 769 (1970). We have said that "The reasonable cash market value, reflected by sales of comparable property, is relevant for determining the correct valuation of a piece of property, if there have been such sales." *Matter of Protest of Miller,* supra [542 P.2d at 1187].

Taxpayer was not denied due process.

C. *The board's oral decision was correct. Nevertheless, it was not binding on appeal.*

Del Rio contends the board's decision was not in accordance with § 72–31–6, N.M.S.A.1953 (Special 1974 Supp.). This section provides that the county assessor's valuations are presumed to be correct. In orally announcing its "decision", the chairman of the board stated that Del Rio had not overcome the presumption. We agree.

■ Taxpayer failed to present any evidence of sales of comparable property or evidence of value based on generally accepted appraisal techniques. Its only evidence, the purchase price of its land in question, did not establish a market value under § 72–29–5(B), supra. The presumption of the correctness of the assessor's valuation was not overcome.

However, the board's pronouncement did not constitute the final order of the board, duly entered pursuant to subsection B of § 72–31–27, supra. It is from this final order that the appeal was taken.

■ The rule is established that statements of a judge as to reasons for the judgment, made before the judgment is entered, which statements are not embodied therein, cannot be considered as a part of the judgment. *Hendrix v. Hunter,* 99 Ga. App. 785, 110 S.E.2d 35 (1959); *Freeman v. Freeman,* 197 Tenn. 75, 270 S.W.2d 364 (1954); *Marsden v. Nipp,* 325 Mo. 822, 30 S.W.2d 77 (1930); *In Re Swanson's Estate,* 171 Cal.App.2d 437, 340 P.2d 695 (1959); 49 C.J.S. Judgments § 62a at p. 182 (1947).

In *Bouldin v. Bruce M. Bernard, Inc.,* 78 N.M. 188, 189, 429 P.2d 647, 648 (1967) the Supreme Court said:

* * * [A]n oral ruling by the trial judge is not a final judgment. It is merely evidence of what the court had decided to do—a decision that the trial court can change at any time before the entry of a final judgment.

An order of a protest board is analogous to the judgment of a court. *Carolina Aluminum Co. v. Federal Power Commission,* 97 F.2d 435 (4th Cir. 1938). "The courts have uniformly held that the decisions rendered by an officer or a board legally constituted and empowered to settled [sic] the question submitted to it, when acting judicially, have the force and effect of a judgment." *City of Socorro v. Cook,* 24 N.M. 202, 212, 173 P. 682, 685 (1918).

■ We hold that the "decision" of the Valencia County Protests Board is not subject to review on appeal of its final order.

D. *There was substantial evidence to support the board's decision.*

■ Del Rio contends there was no evidence to support the board's decision pursuant to § 72–29–5(B), supra. We disagree.

*First,* the assessor's valuation was presumed to be correct. This is sufficient evidence, where uncontradicted, to support the board's decision.

*Second,* the evidence submitted by the assessor established the market value assessed against the taxpayer.

■ The issue is: What are comparable sales of property? Taxpayer cites no authority to support its argument that the assessor's evidence of sales of property of a different size in different but near locations and of different year are not comparable sales. We have no duty to search for authority or consider taxpayer's claim unless it is apparent on the face of the claimed error that it has merit. *Williams v. Town of Silver City,* 84 N.M. 279, 502 P.2d 304 (Ct.App.1972) (Sutin, J., dissenting); *City of Bremerton v. Kitsap County Sewer District,* 71 Wash.2d 689, 430 P.2d 956 (1967); *State v. Alden,* 73 Wash.2d 360, 438 P.2d 620 (1968).

We have chosen to discourse on the issue because the utilization of the standard "comparable sales of property" is the matter of first impression. Taxpayers are now contesting market value assessments of land, and we believe that guidelines must be established. We recognized that comparison with identical land and improvements for the purpose of ascertaining market value may be difficult at times, if not impossible. To be comparable, the board and the taxpayer should seek evidence that meets the test.

In determining market value of property for assessment, " * * * market value has been defined as a price which a purchaser, willing but not obliged to buy, would pay an owner willing, but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Deitch Company v. Board of Property Assessment, Appeals & Review,* 417 Pa. 213, 217, 209 A.2d 397, 400 (1965). *See, Tome Land & Improvement Co. v. Silva,* 83 N.M. 549, 494 P.2d 962 (1972).

"The best method of ascertaining what a willing and informed buyer would pay a willing and informed seller in usual circumstances in light of the highest and best use to which the property may be put in the not too distant future is through the use of comparable sales." *State, Depart-*

*ment of Highways v. Cartlidge,* 258 So.2d 175, 176 (La.App.1972).

"The word 'comparable' is defined as 'capable of being compared (with); worthy of comparison,' (Webster's New International Unabridged Dictionary, Second Edition), and thus must necessarily include dissimilarities as well as similarities." *Department of Public Works, Etc. v. Chicago Title & Trust Company,* 408 Ill. 41, 53, 95 N.E.2d 903, 910 (1950).

"The rule regarding comparable sales is one of relevancy and not unlike the general evidentiary rule applied in all proceedings requiring similarity of conditions. This test is usually left to the discretion of the court in light of the circumstances of each case." *Department of Public Works and Buildings v. Lankford,* 65 Ill.App.2d 133, 137, 212 N.E.2d 14, 16 (1965).

*Trustees of Indiana University v. Williams,* 252 Ind. 624, 628, 251 N.E.2d 439 (1969) adopted the following rule:

As commonly used in valuing real estate, a "comparable" is property similar to the property being appraised, and which has been recently sold or is currently being offered for sale. The publication "The Appraisal of Real Estate" (5th ed. 1967), prepared by a special committee of the American Institute of Real Estate Appraisers states, at page 63:

" * * * an estimate of value of a property by comparing it with similar properties of the same type and class which have sold recently or are currently offered for sale in the same or competing areas * * *."

[251 N.E.2d at 441–42].

In arriving at a valuation of property for tax purposes, *McKnight Shopping Center v. Board of Property Assessment, Appeals & Review,* 417 Pa. 234, 241, 209 A.2d 389, 393 (1965) said:

In reviewing sales of other properties, "to compare" means to examine the characters or qualities of one or more proper-

ties for the purpose of discovering their resemblances or differences. The aim is to show relative values by bringing out characteristic qualities, whether similar or divergent. Thus, comparisons based on sales may be made according to location, age and condition of improvements, income and expense, use, size, type of construction and in numerous other ways.

■■ The taxing authority may, therefore, rely on any evidence that is relevant. To arrive at uniformity in the assessment of property for taxation, as provided in Art. VIII, §§ 1 and 2, Constitution of New Mexico, the taxing authority and the taxpayer can introduce " * * * evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of *any other real estate in the taxing district for a reasonable period prior to the assessment date*." [Emphasis added] *McKnight Shopping Center v. Board of Property Assessment, Appeals & Review,* supra [209 A.2d at 393]. See, *Pittsburgh Miracle Mile Town & Country Shopping Center v. Board of Property Assessment, Appeals & Review,* 417 Pa. 243, 209 A.2d 394 (1965); *Deitch Company v. Board of Property Assessment, Appeals & Review,* supra; *Buhl Foundation v. Board of Property assessment,* 407 Pa. 567, 180 A.2d 900 (1962); see also Saliba, David J., Real Estate Valuation in Court, International Association of Assessing Officers, 2 (1972).

■ Assessor's evidence of a sale of a smaller tract of land in the vicinity of Del Rio was substantial and supported the board's decision. If the sale of the home and the lease agreement testimony were generally accepted appraisal techniques, this evidence would be admissible in support of the board's decision.

■ *E. Taxpayer was not denied due process.*

Taxpayer contends that due process was denied because the Property Tax Department did not adopt regulations that list the procedures to be followed, identify the methods of valuation in general use by the department, and the applicable factors to be included in determining the value of property.

*First,* the amended statute does not require regulations. *Second, Matter of Protest of Miller,* supra, gave taxpayer the right of discovery by desposition of all the facts necessary to defend the assessed valuation of its property. Taxpayer did not make discovery because it represented itself. Its attorneys were first employed on this appeal.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., concurs in result only.