558 P.2d 53

**SAN PEDRO SOUTH GROUP, Appellant,**

v.

**BERNALILLO COUNTY VALUATION PROTEST BOARD, Appellee.**

No. 2619.

Court of Appeals of New Mexico.

Nov. 30, 1976.

John P. Salazar, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for appellant.

Toney Anaya, Atty. Gen., Santa Fe, John C. Cook, Asst. Atty. Gen., for appellee.

## OPINION

SUTIN, Judge.

Taxpayer appeals three orders of the Bernalillo County Valuation Protest Board on valuations made on three properties of the taxpayer known as the South San Pedro Shopping Center. We reverse.

The Board, consisting of three members, instead of six, heard the protests and entered the orders. A quorum not being present, the orders of the Board are invalid. *Petition of Kinscherff*, 89 N.M. 669, 556 P.2d 355 (Ct.App.1976).

Even though the orders of the Board are invalid, we hold that the orders in the instant case must be vacated.

Section 72–29–5(B), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, 1975 Supp.) provides three methods of determining valuation of property for taxation purposes: (1) *market value*, as determined by sales of comparable property. If that method cannot be used due to the lack of comparable sales data, then its value should be determined by using (2) *an income method*, or (3) *costs methods of valuation*.

Taxpayer's protest were based on the income method and cost method of valuation. Taxpayer's protests were not challenged by the Board. During the hearing, no mention was made of the market value method of valuation and neither did the Board rule

that market value of comparable sales was the method by which taxpayer must establish its protests.

*Evidence at hearing does not support the valuation made by the Board.*

Taxpayer testified that the shopping center housed both retail businesses and offices; that the buildings were built in stages, from different materials. The buildings were about 20 years old, in "very poor shape" and in need of extensive repairs; that taxpayer was losing some of the "gas fuel units, [and] the parking lot needs to be paved and restriped"; that leases would expire in 1976, and taxpayer believed that leases would not be renewed; that two rental vacancies had existed for a year; that there was a very small cash flow; that the old leases were still effective and rents, therefore, could not be raised; that because the property was zoned C–1 and was not on a thoroughfare, taxpayer could not rent to a liquor licensee.

Taxpayer introduced in evidence the 1975 statement of income and expenses certified to by the vice president of taxpayer, and a prospective pro forma statement of taxpayer for the year 1976. The pro forma statement showed gross income, expenses and depreciation which showed a net loss of $6,226.00. Based on this pro forma statement, taxpayer testified that the property was worth only $259,000.00.

Upon questioning by the Board, taxpayer testified that a year and a half before, taxpayer had purchased the property for $340,000.00, $90,332.00 less than the original assessed value, and the taxpayer believed the property was worth less than the amount invested.

■ The presumption of the correctness of the assessor's valuations is fixed by statute § 72–31–6, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, 1975 Supp.). This presumption is rebuttable and is best characterized as a prima facie inference in that it shifts the burden of going forward with the evidence to the taxpayer to prove the con-

trary. *Kinscherff,* 89 N.M. at 673, 556 P. 2d at 359. Based upon taxpayer's protest and evidence presented thereon, the presumption was overcome, and the burden rested on the county assessor to meet the contentions of the taxpayer.

■ Three appraisers appeared for the county assessor. One testified that the county assessor did not value the property as far as an income approach is concerned. The additional appraisers testified that they did not inspect the property. The appraiser who did inspect the property left the morning of the hearing and was not present. The appraisers read from the absentee's notes that one of the buildings and paving was valued at $7.11 per square foot. A second building was valued at $6.53 per square foot. The third one was valued at $7.91 per square foot. These were old values that had been set in 1972, based on a 1969 price guide, and none of the buildings had been revalued. One appraiser testified that in 1972 he raised the valuation of the buildings from $125,871.00 to $227,225.00, based upon the square footage method, because "the man from the State Property Appraisal Department said the values are too low in this shopping center so we went out and we raised them"; that the County Board of Equalization reduced the valuation back to $125,871.00. So, in 1976 the county assessor simply set the valuation of the buildings back up to $227,225.00.

In *Kinscherff,* supra, we said:

Section 72–31–27(A), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1975) provides in part that: "The technical rules of evidence and the Rules of Civil Procedure do not apply at protest hearings before a county valuation protests board." However, "the rules relating to weight, applicability or materiality of evidence are not thus limited." *Eaton v. Bureau of Revenue,* 84 N.M. 226, 501 P. 2d 670 (Ct.App.1972), cert. denied, *Commissioner of Revenue v. Eaton,* 84 N.M. 219, 501 P.2d 663 (1972). [*Kinscherff* 89 N.M. at 673, 556 P.2d at 359].

The county assessor did not follow any statutory method of valuation in 1976.

The decisions of the Board were arbitrary and capricious, not supported by substantial evidence in the record taken as a whole, and otherwise not in accordance with law. Section 72–31–28(D) N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, 1975 Supp.).

The orders of the Board are vacated.

This cause is remanded to the Bernalillo County Valuation Protest Board with instructions to request the county assessor to determine the value of the South San Pedro Shopping Center property according to law.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.