560 P.2d 174

**Petition of FIRST NATIONAL BANK, Mrs. Helen Baures, John Marron, Tijeras Place Imp. Co., William C. Stein, Albert L. Matthew, Cale L. Karson, Jr., and Kay Karson, and Scanvest I Ltd., Appellants,**

v.

**BERNALILLO COUNTY VALUATION PROTEST BOARD, Appellee.**

No. 2671.

Court of Appeals of New Mexico.

Jan. 18, 1977.

Bernard L. Robinson, Bernard L. Robinson, P. A., Joseph T. Sprague, Stribling, Sprague & Sprague, P. A., Albuquerque, for appellants.

Vance Mauney, Albuquerque, Toney Anaya, Atty. Gen., Santa Fe, John C. Cook, Asst. Atty. Gen., for appellee.

OPINION

SUTIN, Judge.

This is an appeal from orders entered by the Bernalillo County Valuation Protest Board. The protest was heard by only two members of the board and the order entered was signed by the chairman of the board. This was not in compliance with the law that a majority of the board attend the hearing. *Petition of Kinscherff,* 89 N.M. 669, 556 P.2d 355 (Ct.App.1976). The orders are void for lack of jurisdiction. We reverse.

This appeal demands additional guidelines for taxpayers and the board.

A. *The county assessor has an alternative method of valuation.*

The county assessor has a duty to follow a statutory method of valuation as provided in § 72–29–5(B), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, 1975 Supp.). *San Pedro South Group v. Bernalillo County Valuation Protest Board,* 558 P.2d 53 (Ct.App. 1976).

In their protest and at the hearing, taxpayers relied on the "income method" in determining the valuation of their property for taxation purposes. The assessor had used the "cost methods of valuation." Both methods are set forth in the alternative in § 72–29–5(B). It provides that if market value cannot be determined due to the lack of comparable sales, "then its value shall be determined using an income method *or* cost methods of valuation." [Emphasis added].

"It is Taxpayers' position that the meaning of the quoted phrase is that 'an income method' will be used unless it also is inapplicable; then, if an income method cannot be used, 'cost methods' will be used. Taxpayers do not read the phrase to mean that *either* an income method *or* cost methods may be used at the Assessor's discretion. If that were the intent of the Legislature, the phrase would have been written in such manner." We disagree.

The word "or" as used in a statute is a matter of first impression in New Mexico.

In construing a statute, we must give the word "or" its ordinary meaning, *Mobile America, Inc. v. Sandoval County Commission,* 85 N.M. 794, 518 P.2d 774 (1974), unless a different intent is clearly indicated. *Winston v. New Mexico State Police Board,* 80 N.M. 310, 454 P.2d 967 (1969).

It is agreed that the legislature did give priority to the first method of valuation, a valuation determined by sales of comparable property. It did not do so with reference to the succeeding methods. If the legislature intended to give priority to the second method, the "income method," over the third method, the "cost method," for any reason, it would have phrased the statute in language similar to the priority established in the first method of valuation.

Ordinarily, the word "or" as used in a statute is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise. *Eastern Mass. St. Ry. Co. v. Massachusetts Bay T. Auth.,* 350 Mass. 340, 214 N.E.2d 889 (1966). "There is nothing to indicate that the word 'or' was used in the statute in other than its ordinary meaning, indicating an alternative such as 'either one or another.'" *United States Fidelity & Guar. Co. v. Security F. & I. Co.,* 248 S.C. 307, 149 S.E.2d 647, 650 (1966); *People v. Smith,* 44 Cal.2d 77, 279 P.2d 33 (1955); *Council Plaza Redevelopment Corp. v. Duffey,* 439 S.W.2d 526 (Mo. 1969); *State v. Sawtooth Men's Club,* 59 Idaho 616, 85 P.2d 695 (1938); *State v. Kress,* 105 N.J.Super. 514, 253 A.2d 481 (1969); *Wood v. Paulus,* 524 S.W.2d 749 (Tex.Civ.App.1975); *Central Standard Life Insurance Company v. Davis,* 10 Ill.App.2d 245, 134 N.E.2d 653 (1956).

The word "or" designates alternatives or separate categories. Its ordinary meaning should be followed unless it renders the statute doubtful or uncertain. It does not. The statutory language is clear and unambiguous.

In the instant case, the statute did not give taxpayers the right to determine the method of valuation. It gave the county

assessor the right to use *either* the "income method *or* cost methods of valuation." [Emphasis added].

#### B. *Taxpayer is entitled to a fair hearing.*

On cases appealed to this Court, we find that hearings are two-pronged affairs which constitute confusion confounded. Taxpayer usually proceeds pro se to prove the merits of his protest by a method of valuation that he chooses which is usually different from that used by the assessor. The assessor usually produces no evidence on the taxpayer's method and relies on his own method of valuation. This problem must be resolved.

The right to a fair hearing presupposes that the taxpayer has been informed, prior to the hearing, of the method of valuation used by the county assessor. Otherwise, he cannot be expected to intelligently protest an assessment made.

#### (1) *Taxpayer is entitled to notice from the assessor.*

▮ Section 72–31–24(B)(3) provides that taxpayer's petition of protest filed with the county assessor shall:

> (3) state why the property owner believes the value . . . is incorrect and what he believes the correct value . . . to be; . . .

At the time the protest is filed, taxpayer does not know the method of valuation used by the assessor. No provision is made for notification of the assessor's method of valuation. As a result, taxpayer is unable to state why he believes the value is incorrect, or taxpayer states a method of valuation different from that used by the assessor. We believe the legislature should amend the "Property Tax Code," §§ 72–28–1, et seq., to give notice to the taxpayer of the method of valuation used by the assessor, and require the assessor to furnish taxpayer a copy of the appraisal made.

Nevertheless, taxpayer has the right to discover the method of valuation used. In *Matter of Protest of Miller,* 88 N.M. 492, 495, 542 P.2d 1182, 1185 (Ct.App.1975), we

held that taxpayer has "a right to discovery similar in scope to that granted by Rules 26 to 37 of the Rules of Civil Procedure [§§ 21–1–1(26) to 21–1–1(37), N.M.S.A.1953 (Repl. Vol. 4, 1970)]."

By this discovery process, taxpayer can obtain all information on the method of valuation used by the assessor.

#### (2) *As an alternative, taxpayer is entitled to assistance from the board.*

▮ A protest board is a quasi-judicial body. It has a duty to see that a fair hearing is held. A taxpayer, with or without the assistance of counsel, is entitled to know the method of valuation used by the assessor, as well as the techniques of appraisal made to warrant the valuation. At the time taxpayer is given notice of a hearing on the merits, the board should give taxpayer notice that the method of valuation used, and the appraisal made, are available in its office for inspection. If it desires, it can send this information to taxpayer along with the notice of the hearing on the merits.

#### (3) *As another alternative, separate hearings can be held.*

▮ A two step process is necessary: (1) the selection of a proper method of valuation and (2) a hearing before the board on the merits.

Where a dispute arises between the assessor's and the taxpayer's methods of valuation, the statute makes no provision for a solution of this dispute.

. At a hearing before the board on the selection of a method of valuation, taxpayer shall present competent evidence to create an issue of fact and request the board to determine the proper method of valuation. When a proper method of valuation has been determined, a final hearing can later be held to decide the merits of the protest. If the assessor's method of valuation is not selected by the board, the assessor shall revalue the property based upon the method selected. If the method selected is contested on appeal, we can decide which

method was proper under the facts of the particular case.

C. *Accepted appraisal techniques shall be used by county assessor, and by taxpayer to overcome presumption of correctness of assessor's valuation.*

Section 72–29–5(B) provides:

In using any of the methods of valuation authorized by this subsection the valuation authority shall apply generally accepted appraisal techniques.

On the matter of the application of "generally accepted appraisal techniques" by the county assessor, he uses the current New Mexico State Manual. Section 72–28–7. We have no way of knowing whether this manual is a "generally accepted appraisal technique." If necessary, taxpayer has a duty to dispute this fact by expert testimony.

 The value of property determined by the county assessor is presumed to be correct. Section 72–31–6. This presumption can be overcome by taxpayer showing that the assessor did not follow the statutory provisions of the Act or by presenting evidence tending to dispute the factual correctness of the valuation. *McConnell v. State ex rel. Bureau of Revenue*, 83 N.M. 386, 492 P.2d 1003 (Ct.App. 1971). Taxpayer can show that the assessor failed to determine valuation by any statutory method, *San Pedro South Group*, supra, or present evidence of value based on generally accepted appraisal techniques that tend to dispute the factual correctness of the method of valuation used by the board. *Peterson Prop., Etc. v. Valencia Cty. Val. Protests Bd.*, 89 N.M. 239, 549 P.2d 1074 (Ct.App.1976).

 When a taxpayer overcomes the presumption of the correctness of the assessor's method of valuation, the burden shifts to the assessor to prove that his method of valuation utilized a "generally accepted appraisal technique." The board shall then determine the merits of the protest.

 In the instant case, taxpayers did not overcome the presumption because they

used, as evidence, the "income method" of valuation. At a new hearing on its protest, taxpayers have the burden of overcoming the presumption under the "cost methods of valuation" if that method is adopted by the board.

D. *The board's primary duty is to determine "market value" of property for purposes of taxation.*

"[T]he value of property for property taxation purposes shall be its market value . . . ." Section 72–29–5(B).

"In determining market value of property for assessment, '* * * market value has been defined as a price which a purchaser, willing but not obliged to buy, would pay to an owner willing, but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied.'" *Peterson Prop., Etc.*, supra [549 P.2d at 1078]; *Kaiser Steel Corp. v. Property Appraisal Dept.*, 83 N.M. 251, 490 P.2d 968 (Ct.App.1971).

 Essential factors in determining market value are those set forth in "generally accepted appraisal techniques." Section 72–29–5(B). What is most important is that the appraisers, the assessor and the protest board exercise an honest judgment based upon the information they possess or are able to acquire. *New York ex rel. Brooklyn City R.R. Co. v. New York*, 199 U.S. 48, 25 S.Ct. 713, 50 L.Ed. 79 (1905); 72 Am.Jur.2d State and Local Taxation § 754 (1974). An "honest judgment" is not one that favors the state or the taxpayer. It should be a fair, reasonable, just and truthful judgment of valuation of property based upon the best information that can be obtained. It must not be influenced by the need for higher taxes to operate the government, or the apparent large value of property. Every county appraiser, assessor and board must promote honesty in judgment.

An appraiser is "A person appointed by competent authority to make an appraisement, to ascertain and state the true value of goods or real estate." Black's Law Dic-

tionary 129 (4th ed. 1968). An appraisal is a valuation or an estimation of value of property by *an impartial, disinterested person* of suitable qualifications. *Jacobs v. Schmidt*, 231 Mich. 200, 203 N.W. 845 (1925); *Application of Guaranty Trust Co. of New York,* 81 N.Y.S.2d 632 (1948); 6 C.J.S. Appraiser at p. 105 (1975).

By use of a competent appraiser who follows the generally accepted appraisal techniques, the assessor can best determine the "market value" of property for property taxation.

E. *For purposes of appeal, the board must prepare a decision and order.*

 Section 72–31–27(B) provides that "Final action taken by the board on a petition shall be by written order signed by the chairman . . . ." The written order signed by the chairman is a uniform blank form of order. It states that:

. . . after considering all the evidence presented at the Protest Hearing . . .,

ORDERS:

( ) That no change be made in the valuation records of the County Assessor . . . :

( ) That the valuation records . . be changed to reduce the . . . valuation . . .

( ) That the valuation records . . be changed to increase the . . . valuation . . . . .

( ) OTHER:

Upon appeal, under § 72–31–28(D), this "court shall set aside a *decision and order* of the director or a county valuation protests board only if it is found to be:

(1) arbitrary, capricious or an abuse of discretion;

(2) not supported by substantial evidence in the record taken as a whole; or

(3) otherwise not in accordance with law." [Emphasis added].

By inadvertence, the legislature omitted the requirement of a "decision" by the board under § 72–31–27. However, "The practical reasons for requiring *administra-*

*tive findings* are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, *irrespective of a statutory requirement.* The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdictions." [Emphasis added]. Davis, Administrative Law Treatise, § 16.05 at 444 (1958). "The necessity for a finding to sustain administrative action adjudicatory or quasi-judicial in character does not rest wholly upon a statutory requirement of a finding *but may exist even in the absence of specific legislative requirement.*" [Emphasis added]. 2 Am.Jur.2d Administrative Law § 447 at 258 (1962).

"It is generally required, either on constitutional grounds or under statutes so providing, *or even apart from statute,* that an administrative body or officer must make findings of fact on the issues presented to it in an adjudicatory proceeding. . . . [T]he action or determination is void unless it is supported by findings of the basis or quasi-jurisdictional facts conditioning its power." 73 C.J.S. Public Administrative Bodies And Procedure § 139, at p. 464 (1951).

The written order form signed by the chairman contains no information upon which the order is based. For purposes of judicial review, the order must, at least, indicate the reasoning of the board and the basis on which it acted. See *City of Roswell v. New Mexico Water Qual. Con. Com'n,* 84 N.M. 561, 505 P.2d 1237 (Ct.App. 1972).

When this Court does not know the reasoning or basis upon which the order was entered, we cannot determine whether the decision and order of the board should be set aside. Mr. Justice Cardozo's often quoted observation is apt:

We must know what a decision means before the duty becomes ours to say whether it is right or wrong.

*United States v. Chicago, M., St. P. & P. R. Co.,* 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023, 1032 (1935).

Reversed. Taxpayer is granted a new hearing. It may be based upon an amended protest. The hearing shall be held in compliance with the guidelines herein set forth.

HERNANDEZ and LOPEZ, JJ., concur.

HERNANDEZ, Judge (specially concurring).

Because of the manner in which many of the protest hearings have been conducted, I believe it is advisable to reiterate some of the well-established principles and rules governing administrative hearings for the future guidance of the various County Protest Boards.

Protest Boards are quasi-judicial bodies and even though the technical rules of evidence and the Rules of Civil Procedure do not apply at protest hearings (§ 72–31–27(A), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975)), there are various legal principles and rules which are binding upon them. They are bound, as are all courts, by the provisions of constitutional due process and by the fundamental rules of fairness. *State v. Mountain States Tel. & Tel. Co.,* 54 N.M. 315, 224 P.2d 155 (1950); *Transcontinental Bus System v. State Corp. Commission,* 56 N.M. 158, 241 P.2d 829 (1952); *Baca v. Chaffin,* 57 N.M. 17, 253 P.2d 309 (1953); *Ferguson-Steere Motor Co. v. State Corp. Com'n,* 63 N.M. 137, 314 P.2d 894 (1957); *McWood Corporation v. State Corporation Commission,* 78 N.M. 319, 431 P.2d 52 (1967). Procedural due process requires that a protesting taxpayer be given adequate notice of the time and place of the hearing (*Groendyke Transp., Inc. v. New Mexico State Corp. Com'n,* 79 N.M. 60, 439 P.2d 709 (1968)); that he be given the opportunity to be heard and to present evidence in his behalf; and that he be allowed a reasonable right of cross-examination and the right to be represented by counsel should he desire. Due process requires that the Board base its decision on evidence produced at the hearing by witnesses personally present or by authenticated documents, maps, etc., and that the evidence be incorporated in the record. *Transcontinental Bus System v. State Corp. Commission,* supra. That is, the Board may not base its order on facts outside the record about which the taxpayer had no knowledge and no opportunity to be heard in regard thereto. *Woody v. R.R. Co.,* 17 N.M. 686, 132 P. 250 (1913). Its orders must be supported by substantial evidence. *Baca v. Chaffin,* supra; *Ferguson-Steere Motor Co. v. State Corp. Com'n,* supra; and *McWood Corporation v. State Corporation Commission,* supra. Unsubstantiated hearsay does not constitute substantial evidence. *Ferguson-Steere Motor Co. v. State Corp. Com'n,* supra; *McWood Corporation v. State Corporation Commission,* supra.

The essence of a fair hearing is the right to be fully informed of what you are contending against. How else can a taxpayer be expected to protest an assessment intelligently if he doesn't know what it is based upon? *Woody v. R.R. Co.,* supra. This information should either be sent to the taxpayer or he should be informed where and when it is available for his inspection. A third alternative would be to hold a bifurcated hearing. At the first part the Board would be presented with the evidence of how the assessment was arrived at. At the second part the taxpayer would present his evidence and arguments. A protest hearing should not be viewed as an adversary proceeding with the Board arrayed against the taxpayer, even though the taxpayer has the burden of overcoming the presumption of correctness of the assessment (§ 72–31–6, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975)). The Board should readily make available all relevant information which it possesses about the taxpayer's property and the assessment.

I recognize that one of the main purposes of administrative law is to provide a more flexible and informal procedure than is possible before courts. However, informality must not be practiced to the point that a hearing becomes a summary proceeding, a mere formality preceding a predetermined result.

The orders of valuation protest boards must give some indication of their reasoning and of the basis upon which they were adopted in order for this court to be able to perform its reviewing function. *City of Roswell v. New Mexico Water Quality Control Com'n*, 84 N.M. 561, 505 P.2d 1237 (Ct.App.1972).