774 P.2d 1050 (1989)
108 N.M. 462
In the Matter of Demand Metering by OTERO COUNTY ELECTRIC COOPERATIVE, INC.
OTERO COUNTY ELECTRIC COOPERATIVE, INC., Appellant,
v.
NEW MEXICO PUBLIC SERVICE COMMISSION, Appellee, and
Jeanie Clancy and N.C. Grantham, Jr., Intervenors-Appellees.
No. 17831.
Supreme Court of New Mexico.
May 31, 1989.
*1051 Carpenter, Crout & Olmsted, Richard N. Carpenter, Patricia J. Turner, Santa Fe, S. Thomas Overstreet, Alamogordo, for appellant.
Parsons, Harris & Bryant, Ronald G. Harris, Ruidoso, Hinkle, Cox, Eaton, Coffield & Hensley, Paul Kelly, Santa Fe, for intervenors-appellees.
Lee W. Huffman, Com'n Counsel, Santa Fe, for appellee Public Service Comm.

OPINION
BACA, Justice.
Otero County Electric Cooperative, Inc. (Otero) appeals a decision of the New Mexico Public Service Commission (PSC or Commission) which held that demand metering was neither just nor reasonable and should be discontinued. We affirm the Commission's decision.

Demand Metering
The issues in this case are whether a particular method of billing (demand metering) is fair to those utility customers who are paying a premium, and whether the utility could have been required to prove the fairness of this method of rate assessment as part of a larger responsibility to prove the fairness of its total rate structure. In order to apply the statutory scheme under which utilities are regulated in New Mexico, we first briefly explain the controversy.
Otero is a public utility cooperative that purchases electricity in bulk and then distributes to over 10,000 customers throughout Otero, Lincoln and Chaves Counties. Otero's bulk electricity supplier charges Otero a fixed rate per unit of energy and a surcharge for the time of Otero's greatest demand. This fee system reflects the high cost to utilities of maintaining a generating plant all year that, for example, may be needed only during summer months when air conditioning raises system-wide demand. Otero, therefore, must pay a premium for its peak demand. Otero, in turn, looks to recover this cost from those among its customers who may contribute to Otero's system-wide peak demand.
The method employed by Otero to recover its peak demand costs is demand metering. For those customers whose energy use meets certain criteria, Otero installs meters which track the customer's usage, reflecting that customer's peak demand. If the peak usage exceeds a certain level, Otero tacks a surcharge on that customer's bill. Otero's asserted aim is to cut the individual peaks through the disincentive of surcharges and thereby cut Otero's system-wide peaks, and ultimately reduce the surcharge Otero pays to its supplier. The problem with Otero's theory is the utility's inability to show a correspondence between the individual customer peaks and the system-wide peaks. If a customer has heavy usage in the middle of the night, for example, under Otero's method the customer would pay a surcharge even though that demand would tend to lower, not raise, the per unit cost of energy to Otero. While accurate metering is available that could solve this inherent uncertainty, Otero argues the cost of this technology is prohibitive.

Procedural History
Otero's use of demand meters drew formal complaints from its customers for the first time during a 1986 hearing on a rate increase request in Case No. 2041. In its order from Case No. 2041, the PSC authorized a separate review of the fairness of demand metering. In that review, then *1052 designated Case No. 2048, the hearing examiner found for the complainants and the Commission staff, who argued demand metering was discriminatory and not in accordance with NMSA 1978, Section 62-8-1 (Repl.Pamp. 1984). On administrative appeal, the Commission upheld the hearing examiner's decision.

Standard of Review
This court's review of administrative decisions is based upon whole record review. Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd., 101 N.M. 291, 681 P.2d 717 (1984). The court reviews evidence supporting administrative findings and evidence tending to discredit the findings. This court will not reweigh the evidence, however, but will seek to uphold a decision without ignoring evidence in the record. On appeal, Otero must show the evidence supporting the decision is not credible when viewed in the context of all available evidence and that even when seen in a favorable light, the supporting evidence would not have caused a reasonable person to hold as the fact finder held. National Council on Compensation Ins. v. New Mexico State Corp. Comm'n, 107 N.M. 278, 756 P.2d 558 (1988).

Burden of Proof
Otero contends the hearing examiner incorrectly placed the burden of proof on Otero when it reviewed the fairness of demand metering in Case No. 2048. The Commission claims the burden of proof was correctly left with Otero in Case No. 2048, since Case No. 2048 was ordered from Case No. 2041, a rate proceeding in which Otero bore the burden of proof for showing the necessity of a rate increase. We first review the Commission's claim to authority in the rate case under NMSA 1978, Section 62-8-7 (Cum.Supp. 1988). Second, we review the Commission's authority to sever the fairness of demand metering from Case No. 2041, and finally the hearing examiner's determination that Otero bore the burden of proof in the subsequent proceeding, Case No. 2048.
The statute governing the regulatory relationship between Otero and the PSC is Article 8 of Chapter 62, entitled "Duties and Restrictions Imposed Upon Public Utilities." NMSA 1978, §§ 62-8-1- to 62-8-10 (Cum.Supp. 1988). The two sections that might apply to a review of the fairness of demand metering are sections one and seven. Section 62-8-1 is entitled "Rates," and it states a single legislative purpose: "Every rate made, demanded or received by any public utility shall be just and reasonable." Section 62-8-1 offers no guidance to the Commission for achieving this goal, nor does it specify procedures. Section 62-8-7 entitled "Change in rates," is, by contrast, very specific, setting forth detailed procedures to be adhered to in a rate case. Subsection A requires the utility to bear the "burden of proof to show that [an] increased rate or charge is just and reasonable." § 62-8-7(A).
When reviewing statutes this court will read all relevant provisions together in order to determine legislative intent. General Motors Acceptance Corp. v. Anaya, 103 N.M. 72, 703 P.2d 169 (1985). In reviewing utility regulations as applied to rate cases, this court has interpreted the statutory language broadly. See Hobbs Gas Co. v. New Mexico Pub. Serv. Comm'n, 94 N.M. 731, 616 P.2d 1116 (1980) (Commission vested with considerable discretion in determining whether rates are just and reasonable); see also New Mexico Indus. Energy Consumers v. New Mexico Pub. Serv. Comm'n, 104 N.M. 565, 569, 725 P.2d 244, 248 (1986) (New Mexico Supreme Court consistently construes broadly statute governing the valuation of properties for the setting of rates by the Commission).
Otero contends Section 62-8-1 controls this case because the legislature did not specify review of a utility's rate structure under Section 62-8-7, providing only for PSC review of a utility's rate increase request. Since Section 62-8-1 does not specify upon whom the burden of proof should fall, Otero argues ordinary administrative law principles apply to place the burden on complainants, the objecting customers and the Commission staff. We *1053 read the statute differently, finding Section 62-8-7 to be the provision under which the overall purpose of Section 62-8-1 is carried out for the given instance of a rate request. To read the statute differently would impose severe procedural constraints on the PSC and inhibit the regulatory process.
Finding the Commission's review of Otero's rate structure to fall under the procedural guidelines of Section 62-8-7 is consistent with regulatory goals of efficiency and fairness. First, allowing the PSC to place the burden of proof on a utility streamlines the regulatory process by avoiding costly discovery. Second, in order to approve a particular rate increase, the PSC may need to review aspects of that utility's rate structure as part of its rate increase review. Finally, Otero's fear that the PSC will require Otero to prove the reasonableness of its entire rate structure during the course of every proceeding has no basis in the self-interest of a regulatory agency. The PSC's role is not to disrupt the flow of electrical services, but to regulate it. In this very case, the PSC has not yet interrupted Otero's revenue stream, even when the Commission has found the demand metering component to be unjust and unreasonable. We conclude the legislature has granted the PSC discretion to place the burden of proof on the utility in any rate proceeding.
The second part of our inquiry is whether the PSC may assign an issue raised in a rate request hearing to a separate proceeding. We have already determined the legislature intended the PSC to act expeditiously on utility rate requests. Under Section 62-8-7 a rate increase can be suspended unconditionally by the PSC for nine months. § 62-8-7(C). If the PSC fails to act, the increase will automatically go into effect. See Public Serv. Co. v. New Mexico Pub. Serv. Comm'n, 92 N.M. 721, 594 P.2d 1177 (1979). In this case, the PSC granted a rate request, but ordered a separate proceeding to review the fairness of demand metering. Given the nine-month time constraint of Section 62-8-7(C) and the imperative of "just and reasonable" rates under Section 62-8-1, the PSC's severance is a reasonable procedure under its legislative mandates. This procedure allowed the PSC to leave the utility's income stream intact, while preserving its mandate under Section 62-8-1 to determine the reasonableness of Otero's rate structure.
Having determined the legislature intended utilities to bear the burden of proof for inquiries about their rate structure, and having affirmed the Commission's discretion to sever a fairness hearing from a rate proceeding, we also affirm the hearing examiner's determination that Otero bore the burden of proof in Case No. 2048. The utility was put on notice of its burden in Case No. 2041. The utility was in the best position to explain the fairness of demand metering. Finally, the statutory scheme vests broad discretion in the PSC to review utility rates in an efficient and reasonable manner.

Merits of Demand Metering
Whether or not the complainants bore the burden of proof in Case No. 2048, on appellate review we look to the whole record to see whether substantial evidence supports the fact finder's decision. Duke City Lumber Co., 101 N.M. at 294, 681 P.2d at 720. The substantial evidence standard requires only that a reasonable person could have decided as the fact finder found: it does not require that a preponderance of the evidence supports the finding. See National Council on Compensation Ins., 107 N.M. at 282, 756 P.2d at 562. While we review any evidence that supported Otero's position, we use that evidence only to test the credibility of evidence supporting the Commission's decision and reject that decision only if the evidence *1054 in support of that decision was rendered incredible.
The record reflects individual customers of Otero testified to the disproportionate and harsh effects of demand metering. Otero did not discredit this testimony or render it incredible through other evidence. Since evidence existed upon which the Commission could have found demand metering unjust and unreasonable, we must affirm the Commission's decision.
IT IS SO ORDERED.
SOSA, C.J., and RANSOM, J., concur.