# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>September 13, 2016</u>

**NO. 34,869**

**2727 SAN PEDRO LLC,**
**a limited liability company,**

Petitioner-Appellant,

v.

**BERNALILLO COUNTY ASSESSOR,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

J. Victor Pongetti
Albuquerque, NM
(Inactive as of 12/31/2015)

for Appellant

Robles, Rael & Anaya P.C.
Vanessa R. Chavez
Marcus J. Rael, Jr.
Albuquerque, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

{1} This appeal arises from proceedings related to Appellant 2727 San Pedro LLC's formal protest of Appellee Bernalillo County Assessor's (the Assessor) 2014 notice of value for the subject property for property tax purposes. After considering evidence from both parties, the Bernalillo County Valuation Protests Board (the Protests Board) valued the property at $900,200—the amount proposed by the Assessor. Appellant appealed to the district court, which affirmed.

{2} This Court granted certiorari under Rule 12-505 NMRA to resolve questions related to the sufficiency of the evidence. After reviewing the testimony supporting the Assessor's valuation and considering our substantial evidence jurisprudence, we conclude that the testimony does not support a conclusion that the Assessor's valuation of the property resulted from the application of generally accepted appraisal techniques. We therefore vacate the Protests Board's valuation and remand to the Protests Board for additional proceedings consistent with this opinion. In its appellate briefing, Appellant raised several legal issues not contemplated in its petition for writ of certiorari. Based on Rule 12-505(D)(2)(b), we decline to review these issues.

**BACKGROUND**

{3}    Appellant is the owner of a commercial office building located at 2727 San Pedro NE in Albuquerque, New Mexico. Appellant received the property's annual valuation report from the Assessor on or around May 22, 2014. This report valued the property at $1,113,300. Appellant filed a petition protesting the Assessor's assessment of value and proposed that the correct value was $753,690. This petition additionally proposed that the income method of valuation was the most appropriate method by which to determine the value of the property. The Protests Board scheduled a hearing for July 8, 2014.

{4}    On June 25, 2014, the Assessor recalculated its valuation of the subject property and sent Appellant a new valuation report. This report valued the property at $1,031,500. On July 8, 2014, immediately prior to the protest hearing, the Assessor again recalculated its valuation, further reducing the value to $900,200. Ms. Arlene Jaramillo, an appraiser employed by the Assessor's office, represented the Assessor before the Protests Board. Jaramillo conceded during the hearing that properties considered as part of a commercial sales comparison were not sufficiently similar to support a valuation of the property. Because of the lack of sufficiently comparable properties, Jaramillo stated that the Assessor utilized the income method of valuation to determine the value of the property.

2

{5}     Appellant introduced evidence supporting its proposed valuation, including Annual Property Operating Data (APOD) reports for the years 2011 through 2013 and a projected APOD for the year 2014. It also offered the testimony of a local real estate agent, although this witness was expressly not qualified as an expert in commercial real estate appraisal.

{6}     With respect to the central issue in this case, Appellant argued that the Assessor, in applying the income method of valuation, should have utilized Appellant's actual operating expenses, as reflected in the 2014 projected APOD, rather than limiting its expenses to forty-five percent of the effective gross income. In support of this argument, Appellant introduced the Protests Board's 2009 decision and order for the property, in which the Protests Board stated that such an "expense limit is not a generally accepted appraisal technique."

{7}     Jaramillo testified that the Assessor's application of the income method of valuation utilized a forty-five percent limitation on operating expenses based upon independent sources of market research. Specifically, Jaramillo stated, "[F]rom what we have seen as far as what people are bringing in, what we've researched from Business Weekly and Co-Star, right now the max[imum] vacancy is at fifteen percent and the max[imum] expenses [are] at forty-five percent, so that's what we allowed" and "[We] us[ed] the market vacancies, expenses, reserves, and such that we have

been giving everybody else based on the research we have done with Co-Star, Business Weekly, and everybody else that has brought us any kind of information." Jaramillo also testified that Appellant's "expenses were at eighty-seven percent, which is really high for what the market is doing."[1] Jaramillo did not testify to the scope, with respect to the time period or property type, of the Assessor's application of the forty-five percent operating expense limitation.

{8}     The Protests Board concluded that its preference would be "to see the Assessor's actual market studies to support the expense limits imposed[,]" but that "the Assessor's approach to value is most reliable." The Protests Board entered a decision and order that valued the subject property at $900,200. The decision and order additionally noted that the Assessor "offers an income approach valuation employing [Appellant's] numbers, but limits vacancy to [thirteen percent],[2] management fees to [three percent], reserves to [four percent] and expenses to [forty-five percent], in accordance with the Assessor's market research and review of data

---

[1]The Assessor asserts that analysis of Appellant's 2013 APOD results in a proposed operating expense of eighty-seven percent. The Assessor calculates this percentage by "adding the 2013 [o]rdinary [e]xpenses and [t]otal [o]ther [e]xpenses, subtracting [r]eal [e]state [p]roperty [t]axes, and then dividing by the [g]ross [o]perating [i]ncome."

[2]Jaramillo testified that the maximum vacancy allowable at the time of the assessment was fifteen percent. We presume that the thirteen percent cited in the Protests Board's decision and order was a clerical mistake.

4

from other properties." The order did not expressly state the source of, or basis for, these figures, or whether Appellant had overcome the statutory presumption of correctness afforded to the Assessor's determination of value by NMSA 1978, Section 7-38-6 (1981).

{9} Appellant timely filed a notice of appeal and statement of appellate issues. Appellant raised eight issues on appeal to the district court. Five of those issues related directly or indirectly to whether substantial evidence supported the Protests Board's implied conclusion that the Assessor's valuation of the subject property was based upon generally accepted appraisal techniques. Appellant also asserted that the Protests Board erred in failing to expressly conclude that Appellant had overcome the statutory presumption of correctness. In its statement of appellate issues, Appellant provided an alternative calculation of its total operating expenses, amounting to sixty-two percent of gross operating income.[3]

{10} The district court affirmed the Protests Board's valuation in a memorandum opinion and order filed on June 23, 2015. Due to a clerical mistake, the order was amended and refiled on June 25, 2015. The district court first addressed the Protests Board's failure to expressly conclude whether Appellant had overcome the statutory

_____

[3]Appellant applied projected gross operating income and total operating expenses for 2014.

5

presumption of correctness afforded to the Assessor's determination of value, stating, "The Court agrees the [Protests] Board should have made a finding on this issue[,] . . . [but] will assume, for purposes of this appeal, that the presumption was overcome."

{11} The district court, quoting *First National Bank v. Bernalillo County Valuation Protest Board*, 1977-NMCA-005, 90 N.M. 110, 560 P.2d 174, noted that without a presumption of correctness, the burden shifted to the Assessor to "prove that his [or her] method of valuation used a generally accepted appraisal technique." It also concluded that the Assessor has a policy, based upon market research, that places a forty-five percent limitation on operating expenses when applying the income approach to valuation. It ruled that "substantial evidence supports the use of market data to determine the amount of ordinary and necessary expenses when valuing property for taxation purposes using the income method." In support of its ruling, the district court stated that Jaramillo's "sworn testimony that the Assessor employs a [forty-five percent] cap is itself competent evidence that such a policy exists." The district court also noted that "there is no evidence in the record to dispute the conclusion that the use of market data to determine the expense ratio is a generally accepted technique[,]" that "Appellant has identified no provision in the statutes or regulations that requires the Assessor to use[] a subject property's actual expenses," and that the Protests

Board "determined upon independent review that the Assessor's approach was reliable." The district court was not persuaded that the Protests Board's 2009 decision and order for the property (1) was relevant in determining whether a policy limiting operating expenses to an established percentage is a generally accepted appraisal technique or (2) had any estoppel effect on the 2014 valuation.

{12}     Appellant filed a petition for writ of certiorari to this Court. Appellant's writ presented two questions for review:

> [1] Was there substantial evidence to support the decision of the [Protests] Board that the method used by the Assessor met the statutory requirement in [NMSA 1978, Section 7-36-15(B) (1995)] as a generally accepted appraisal technique?

> [2] Was the decision of the District Court affirming the decision of the [Protests] Board arbitrary because there was no substantial evidence to support the [Protests] Board's decision that the Assessor's technique met the requirements of [Section 7-36-15(B)] as a generally accepted appraisal technique?

We granted Appellant's petition to address these questions.

**PRESERVATION**

{13}     As a general rule, claims of error are reviewed by this Court only if preserved at trial. Rule 12-216(A) NMRA. However, this rule is limited in the context of administrative hearings. *See Dick v. City of Portales*, 1994-NMSC-092, ¶¶ 5-6, 118 N.M. 541, 883 P.2d 127 (holding that "[o]ur statutes do not require formal

7

preservation of error before appeal may be taken" in cases in which the determination of a local governing body acting in a quasi-judicial capacity is challenged based upon a substantial evidence argument). "A [property tax valuation] protest board is a quasi-judicial body." *First Nat'l Bank*, 1977-NMCA-005, ¶ 18. While Appellant did not raise a substantial evidence argument before the Protests Board, it did raise this argument on appeal to the district court and in its petition for writ of certiorari to this Court. As such, this Court may review Appellant's substantial evidence based arguments.

**STANDARD OF REVIEW**

{14} Rule 12-505 "governs review by the Court of Appeals of decisions of the district court . . . from administrative appeals pursuant to Rule 1-074 NMRA, Rule 1-077 NMRA, or [NMSA 1978,] Section 39-3-1.1 [(1999).]" Rule 12-505(A). If granted, this Court's scope of review under Rule 12-505 is limited to the questions presented in the petition for writ of certiorari. *See* Rule 12-505(D)(2)(b) ("The petition shall contain a concise statement showing . . . the questions presented for review by the Court of Appeals (the Court will consider only the questions set forth in the petition)[.]" (emphasis omitted)); *San Pedro Neighborhood Ass'n v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 2009-NMCA-045, ¶ 29, 146 N.M. 106, 206 P.3d 1011

("The issue now raised was not set forth by either the [b]oard or [the a]pplicant in their petitions for certiorari. We therefore do not consider it.").

**{15}** "Upon a grant of a petition for writ of certiorari under Rule 12-505, this Court conducts the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Town & Country Food Stores, Inc. v. N.M. Regulation & Licensing Dep't*, 2012-NMCA-046, ¶ 8, 277 P.3d 490 (alteration, internal quotation marks, and citation omitted). Our appellate courts apply a whole record standard of review to administrative decisions. *In re Otero Cty. Elec. Coop., Inc.*, 1989-NMSC-033, ¶ 6, 108 N.M. 462, 774 P.2d 1050. This standard requires that "[w]e independently review the entire record of the administrative hearing to determine whether the . . . decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 2011-NMCA-021, ¶ 8, 149 N.M. 379, 249 P.3d 510 (internal quotation marks and citation omitted); *see* § 39-3-1.1 (governing appeals from decisions of a county valuation protests board as stated in NMSA 1978, Section 7-38-28(A) (1999, amended 2015) and providing that a court "may set aside, reverse or remand the final [administrative] decision if it determines that . . . the final decision was not supported by substantial evidence").

{16} Substantial evidence supporting an administrative decision is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Dick*, 1994-NMSC-092, ¶ 8 (emphasis, internal quotation marks, and citation omitted). In determining whether substantial evidence supports an administrative decision, our appellate courts "view[] the evidence in the light most favorable to the agency decision but may not view favorable evidence with total disregard to contravening evidence." *Nat'l Council on Comp. Ins. v. N.M. State Corp. Comm'n*, 1988-NMSC-036, ¶ 7, 107 N.M. 278, 756 P.2d 558 (citation omitted).

## VALUATION OF PROPERTY FOR TAXATION PURPOSES

{17} The valuation of real property for property tax purposes is governed by the Property Tax Code, NMSA 1978, §§ 7-35-1 to -38-93 (1973, as amended through 2016), which provides that "the determination of value is made by the [taxation and revenue] department or the county assessor." Section 7-36-15(A). The value for taxation purposes is the market value "as determined by application of the sales of comparable property, income or cost methods of valuation or any combination of these methods." Section 7-36-15(B). In applying any of these approved methods, "the valuation authority . . . shall apply generally accepted appraisal techniques[.]" Section 7-36-15(B)(1); *First Nat'l Bank*, 1977-NMCA-005, ¶ 22.

{18} The Taxation and Revenue Department has promulgated regulations that guide the application of these methods. 3.6.5.22 NMAC. The income method of valuation is appropriate "when the market value method cannot be used due to lack of data on sales of comparable properties[.]" 3.6.5.22(A)(1) NMAC. "Expenses," for purposes of applying the income method of valuation, are defined as "the outlay or average annual allocation of money or money's worth that can fairly be charged against the revenue or receipts from the property" and are "limited to those which are ordinary and necessary in the production of the revenue and receipts from the property[.]" 3.6.5.22(A)(6) NMAC.

{19} Determinations of valuation by the Taxation and Revenue Department or a county assessor are presumed to be correct. Section 7-38-6; *First Nat'l Bank*, 1977-NMCA-005, ¶ 24. "This presumption can be overcome by [the] taxpayer showing that the assessor did not follow the statutory provisions . . . or by presenting evidence tending to dispute the factual correctness of the valuation." *First Nat'l Bank*, 1977-NMCA-005, ¶ 24. In determining the weight to give admitted evidence of valuation, the protests board members "may use their knowledge and experience[.]" 3.6.7.36(H)(1) NMAC.

{20} Whether an appraisal technique is "generally accepted" is a question of fact. *See First Nat'l Bank*, 1977-NMCA-005, ¶ 23 (stating that a taxpayer has a "duty to

dispute . . . by expert testimony" whether an appraisal technique is generally accepted). If the taxpayer overcomes the statutory presumption of correctness, "the burden shifts to the assessor to prove that his [or her] method of valuation utilized a generally accepted appraisal technique." *Id.* ¶ 25 (internal quotation marks and citation omitted).

{21}     Prior to addressing Appellant's issues on appeal, we must address whether Appellant's testimony and admitted evidence were sufficient to overcome the statutory presumption of correctness afforded to the Assessor's valuation of the subject property. The Assessor proposed a market value based upon its own application of the income method of valuation; an application that utilized a market research-based, forty-five percent limitation on operating expenses. Appellant did not offer expert testimony indicating that the Assessor's application of the income method of valuation did not utilize generally accepted appraisal techniques as outlined in *First National Bank*. *See id.* ¶ 23. However, both the Protests Board, impliedly, and the district court, expressly, indicated that Appellant had overcome the statutory presumption of correctness.

{22}     During the July 8, 2014 hearing, Appellant proposed a market value based upon its own application of the income method of valuation. This application utilized actual operating expenses, as reflected in the 2014 projected APOD. While Appellant's application of the income method of valuation differs from that advocated by the

Assessor, the Assessor did not offer expert testimony disputing that the use of actual expenses is a generally accepted appraisal technique. *See id.* As such, Appellant's "evidence of value . . . tend[s] to dispute the factual correctness of the method of valuation[.]" *Id.* ¶ 24. Neither the Protests Board nor the district court ruled that Appellant failed to overcome the statutory presumption of correctness afforded to the Assessor's valuation. *Cf. Peterson Props., Del Rio Plaza Shopping Ctr. v. Valencia Cty. Valuation Protests Bd.*, 1976-NMCA-043, ¶ 14, 89 N.M. 239, 549 P.2d 1074 (holding that, in the absence of evidence based on generally accepted appraisal techniques, the petitioner did not overcome the statutory presumption of correctness). In the absence of such a ruling, the burden of proof shifted to the Assessor "to prove that his [or her] method of valuation utilized a generally accepted appraisal technique." *First Nat'l Bank*, 1977-NMCA-005, ¶ 25 (internal quotation marks omitted).

**SUFFICIENCY OF THE EVIDENCE**

{23}     Because Appellant overcame the statutory presumption of correctness afforded to the Assessor's valuation of the subject property, we turn to the issue of whether substantial evidence exists such that a reasonable person could conclude that the Assessor's application of the income method utilized generally accepted appraisal techniques. In this inquiry, we account for regulatory language allowing Protests Board members to apply their own experience and knowledge to the admitted evidence.

13

3.6.7.36(H)(1) NMAC. For the reasons discussed below, we conclude that the Assessor's testimony is insufficient to support such a conclusion.

{24} The income method of real estate valuation derives market value from a formula that multiplies a given capitalization rate by the net operating income for the subject property. *Encyclopedia of Real Estate Appraising* 54-55 (Edith J. Friedman ed., 1959). Net operating income is calculated "by deducting from gross income all costs of maintenance and operation." *Id.* at 55. As discussed above, Jaramillo testified at the July 8, 2014 hearing that, when applying the income method of valuation, the Assessor applies a forty-five percent limitation on operating expenses rather than applying the taxpayer's actual reported expenses. Our independent research indicates that such a limitation, based solely on market research, is not universally applied. *See, e.g.*, *Willow Valley Manor, Inc. v. Lancaster Cty. Bd. of Assessment Appeals*, 810 A.2d 720, 726-27 (Pa. Commw. Ct. 2002) ("In estimating expenses, the appraiser . . . must make a stabilized expense projection, considering *actual expenses* and industry standards." (emphasis added)); *Smith v. Bd. of Supervisors of Fairfax Cty.*, 361 S.E.2d 351, 355 (Va. 1987) ("Where an assessment is based on the capitalization of income, contract rent and *actual expenses* must be considered in arriving at economic income[.]" (emphasis added)).

{25} Jaramillo testified that the Assessor derived its forty-five percent limitation on operating expenses from market research from sources including Business Weekly, Co-Star, and "everybody else that has brought us any kind of information." This testimony, however, in no way indicated that the forty-five percent limitation on operating expenses was properly applied (1) to Appellant's office building or (2) during the time period at issue. *See generally Encyclopedia of Real Estate Appraising*, *supra* (describing different considerations in appraising different types of commercial property including apartment buildings, office buildings, retail stores, shopping centers, and industrial property). The Protests Board highlighted this deficiency by stating its preference "to see the Assessor's actual market studies to support the expense limits imposed." Taxpayers are entitled to a "current and correct value[] of property" for taxation purposes. Section 7-36-16(A). Commercial real estate markets, however, fluctuate. Absent data supporting the Assessor's claim that forty-five percent is an appropriate limitation on operating expenses *in this market, for this property type, and during this time period*, we are disinclined to conclude that a reasonable person could conclude that the Assessor conducted the appraisal using generally accepted appraisal techniques.

{26} Furthermore, the Protests Board's 2009 decision and order for the subject property, which was admitted as evidence in this case, demonstrates that the Protests

15

Board had recently repudiated the utilization of blanket limitations on operating expenses when applying the income valuation method. While this order has no precedential value, it indicates a dramatic shift with respect to what constitutes a generally accepted appraisal technique between 2009 and 2014. It is not for this Court to determine whether the Assessor's limitation on operating expenses is, or is not, a generally accepted appraisal technique. However, the Protests Board's 2009 decision and order for this property raises questions as to whether the Assessor's 2014 valuation of the property was the result of the application of generally accepted appraisal techniques, and Jaramillo's testimony does not resolve those questions.

{27}     Both the Assessor and the district court note, in reference to 3.6.7.36(H)(1) NMAC, that members of the Protests Board "determined upon independent review that the Assessor's approach was reliable." However, we do not consider that determination to be sufficient in this context without data, or some other objective source of information, to which the board members may apply such independent review. *Cf. Four Hills Country Club v. Bernalillo Cty. Prop. Tax Protest Bd.*, 1979-NMCA-141, ¶¶ 13, 23, 94 N.M. 709, 616 P.2d 422 (reversing the protest board's determination of value and discounting the testimony of the expert appraiser, stating, "If the only purpose for calling an expert is to have him put forth the hearsay opinion

16

of another, the trier of facts could as well obtain the material itself and dispense with hearing any witnesses.").

{28} In support of its decision, the district court additionally stated, "Appellant has identified no provision in the statutes or regulations that requires the Assessor to use[] a subject property's actual expenses, and the case law does not support his position." We also do not consider this statement to be convincing. First, the case cited by the district court in support of "mass appraisal[s]" relates to the appraisal of undeveloped lots using the comparable sales method. *In re Protest of Cobb*, 1991-NMCA-122, ¶ 2, 113 N.M. 251, 824 P.2d 1053. Second, and more importantly, the district court's argument incorrectly shifts the burden of proof back to Appellant. *See First Nat'l Bank*, 1977-NMCA-005, ¶ 25 ("When a taxpayer overcomes the presumption of the correctness of the assessor's method of valuation, the burden shifts to the assessor to prove that his [or her] method of valuation utilized a generally accepted appraisal technique." (internal quotation marks omitted)). Similarly, in discussing the sufficiency of Jaramillo's testimony to carry the burden of proof, the district court stated that Jaramillo's "sworn testimony that the Assessor employs a [forty-five percent] cap is itself competent evidence that such a policy exists." The question at issue in this case, however, is not whether a certain policy exists or is employed by the Assessor. The question at issue, instead, is whether that policy utilizes generally accepted appraisal

17

techniques to determine current and correct valuations for property tax purposes. We are unable to draw such a conclusion from Jaramillo's testimony before the Protests Board.

**CONCLUSION**

{29}     At oral argument before this Court, Appellant requested that we apply its proposed valuation for the 2014 tax year. Because we lack a sufficient basis to say that Appellant's proposed valuation resulted from the application of generally accepted appraisal techniques, we decline to take such action. Instead, we vacate the Protests Board's valuation of the subject property and remand to the Protests Board for additional proceedings consistent with this opinion.[4]

{30}     **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

---

[4]On remand, Mr. Pongetti, as an inactive attorney, should not be allowed to represent 2727 San Pedro LLC. *See Martinez v. Roscoe*, 2001-NMCA-083, ¶¶ 5-7, 131 N.M. 137, 33 P.3d 887.

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**LINDA M. VANZI, Judge**