This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**2727 SAN PEDRO LLC,**

Petitioner-Appellant,

v.                                                                          **A-1-CA-35898**

**BERNALILLO COUNTY ASSESSOR,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

John R. Polk,
Albuquerque, NM

Vance, Chavez & Associates, LLC
Claud Eugene Vance
Albuquerque, NM

for Appellant

Robles, Rael & Anaya, P.C.
Charles Rennick
Marcus J. Rael, Jr.
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VARGAS, Judge.**

{1}	2727 San Pedro LLC (Taxpayer) appeals the district court's affirmation of the Bernalillo County Valuation Protests Board's (the Board) decision to uphold the Bernalillo County Assessor's (the Assessor) valuation of Taxpayer's property for tax year 2015. Taxpayer claims that the district court erroneously concluded that it had not overcome the presumption that the Assessor's valuation was correct. As a result of this error, Taxpayer argues that the district court failed to properly shift the burden to the Assessor to prove that her method of valuation utilized a generally accepted appraisal technique. Finally, Taxpayer contends that the Assessor failed to use a generally accepted appraisal technique in valuing its property, and, as such, the Assessor's valuation was not supported by substantial evidence. We agree with Taxpayer that it overcame the presumption of correctness and that the burden shifted to the Assessor. We also agree with Taxpayer that the Assessor's valuation was not supported by substantial evidence because the Assessor failed to put on evidence that the expense rate it utilized was appropriate for Taxpayer's property type. We reverse the district court with instructions to remand the matter back to the Board for further proceedings.

**BACKGROUND**

2

{2} This is the second of two appeals Taxpayer filed objecting to the Assessor's valuation of Taxpayer's commercial building at 2727 San Pedro NE in Albuquerque, New Mexico (Property). In its initial appeal, Taxpayer filed a petition protesting the Assessor's 2014 valuation of the Property. *2727 San Pedro LLC v. Bernalillo Cty. Assessor* (*San Pedro I*), 2017-NMCA-008, ¶ 1, 389 P.3d 287. The Board and the district court affirmed the Assessor's valuation. *Id.* We granted Taxpayer's petition for a writ of certiorari and, following briefing and oral argument, issued an opinion on September 13, 2016, vacating the district court's decision and remanding the matter to the Board for additional proceedings because the Assessor failed to satisfy her burden "to prove that [her] method of valuation utilized a generally accepted appraisal technique." *Id.* ¶¶ 2, 25, 29 (internal quotation marks and citation omitted). Specifically, we concluded that the Assessor failed to show that the market data on which she relied to calculate Taxpayer's value was applicable "in this market, for this property type, and during this time period," preventing a reasonable person from concluding that the methodology used was based on a generally accepted appraisal technique. *Id.* ¶ 25 (emphasis omitted).

{3} While its 2014 protest was pending in the district court, Taxpayer received its 2015 notice of value from the Assessor for the Property, valuing the Property at the same amount of the 2014 valuation. Taxpayer protested this valuation, again

3

repeating its argument that the income method of appraisal was most appropriate and the actual income produced from the Property was insufficient to justify the Assessor's valuation. A hearing before the Board on Taxpayer's 2015 protest took place in December 2015.

{4}     Upon conclusion of the hearing, the Board determined the Assessor's valuation was the most reliable, and Taxpayer did not overcome the presumption of correctness in favor of that valuation. Taxpayer appealed the Board's decision to the district court pursuant to Rule 1-074 NMRA. The district court agreed with the Board and concluded Taxpayer did not present evidence tending to disprove the factual correctness of the Assessor's valuation. Taxpayer appealed the district court's decision by filing a petition for a writ of certiorari in this Court pursuant to Rule 12-505 NMRA, which we granted.

**DISCUSSION**

{5}     Taxpayer raises five issues on appeal that we group into two general categories. First, Taxpayer claims that the district court erroneously concluded that it had not overcome the presumption that the Assessor's valuation was correct and therefore failed to shift the burden to the Assessor to prove that her method of valuation utilized a generally accepted appraisal technique. Second, Taxpayer contends that the Assessor failed to use a generally accepted appraisal technique in valuing the Property when it used unreliable hearsay to support its valuation. The

4

Assessor's valuation, Taxpayer claims, was therefore not supported by substantial evidence.

**Standard of Review**

{6} District courts sit in an appellate capacity when reviewing an administrative decision. *See* Rule 1-074(T). "Upon a grant of a petition for writ of certiorari under Rule 12-505, this Court conducts the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Town & Country Food Stores, Inc. v. N.M. Reg. & Licensing Dep't*, 2012-NMCA-046, ¶ 8, 277 P.3d 490 (alteration, internal quotation marks, and citation omitted). We employ a whole record review when reviewing administrative decisions. *See In re Otero Cty. Elec. Coop., Inc.*, 1989-NMSC-033, ¶ 6, 108 N.M. 462, 774 P.2d 1050. "This standard requires that we independently review the entire record of the administrative hearing to determine whether the decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *San Pedro I,* 2017-NMCA-008, ¶ 15 (omission, alteration, internal quotation marks, and citation omitted). "To the extent [Taxpayer] contends that there are errors of law in the [district] court's conclusions or in those findings that function as conclusions, we apply a de novo standard of review." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844. "When the facts are not in dispute,

but the parties disagree on the legal conclusion to be drawn from those facts, we review the issues de novo." *Id.* However, "we give a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 25, 136 N.M. 630, 103 P.3d 554 (internal quotation marks and citation omitted).

**Statutory Scheme for Valuation of Property for Taxation**

{7}    Our Property Tax Code (the Code), NMSA 1978 §§ 7-35-1 to -38-93(1973, as amended through 2018), sets out the method for valuation of real property in New Mexico and authorizes the Taxation and Revenue Department (Department) or the county assessor to determine those values. Section 7-36-15(A). Unless otherwise authorized by the Code, "the value of property for property taxation purposes shall be its market value as determined by the application of the sales of comparable property, income or cost methods of valuation or any combination of these methods." Section 7-36-15(B). The Department or the county assessor "shall apply generally accepted appraisal techniques" in determining property values. Section 7-36-15(B)(1).

{8}    As she had done in 2014, the Assessor used the income method of valuation to determine the value of Taxpayer's Property. "The income method of valuation is a method used to value property by capitalizing its income when the market value

6

method cannot be used due to lack of data on sales of comparable properties . . . [and] is determined by dividing the annual income by the applicable capitalization rate." 3.6.5.22(A)(1) NMAC (2001) " '[I]ncome' . . . is net income or the difference between annual revenue or receipts, actual or imputed, from rental of the property and the annual expenses relating to the property[,]" 3.6.5.22(A)(5) NMAC, and "is based upon the fair rent which can be imputed to the property . . .based upon rent actually received . . . by the owner and upon typical rentals received in the area for similar property in similar use[.]" 3.6.5.22(A)(3) NMAC. Expenses relating to the property that are deducted to arrive at a property's income are defined as "the outlay or average annual allocation of money or money's worth that can fairly be charged against the revenue or receipts from the property. . . . [and] are limited to those which are ordinary and necessary in the production of the revenue and receipts from the property and do not include debt retirement, interest on funds invested in the property or income taxes." 3.6.5.22(A)(6) NMAC.

{9}     "The value of property determined by the county assessor is presumed to be correct." *First Nat'l Bank v. Bernalillo Cty. Valuation Protest Bd.*, 1977-NMCA-005, ¶ 24, 90 N.M. 110, 560 P.2d 174. A taxpayer, however, can overcome the presumption of correctness by "showing that the assessor did not follow the statutory provisions of the [Code] or by presenting evidence tending to dispute the

factual correctness of the valuation" based on generally accepted appraisal techniques. *Id.* "When a taxpayer overcomes the presumption of correctness of the assessor's method of valuation, the burden shifts to the assessor to prove that his or [her] method of valuation utilized a 'generally accepted appraisal technique.' " *Id.* ¶ 25. Both the Board and the district court concluded that Taxpayer did not overcome the presumption of correctness of the Assessor's valuation.

**Taxpayer Overcame The Assessor's Presumption of Correctness**

{10}    At the hearing before the Board, the Assessor advised that she valued the Property by using the actual average rent collected from the Property and market-based values derived from other similar properties for the vacancy and expense rates. Using those numbers, she arrived at a value of $923,800. Taxpayer, by contrast, presented evidence of its actual 2014 expenses through an Annual Property Operating Data (APOD) report, from which he derived a Property value of $721,200.

{11}    Weighing all the evidence presented at the hearing, the Board concluded the "Assessor's valuation is the most reliable and . . . [Taxpayer] has not overcome the presumption of correctness in favor of that valuation." Similarly, the district court held Taxpayer failed to overcome the presumption of correctness because Taxpayer "failed to show the Assessor did not use a generally accepted appraisal technique." In arriving at its conclusion, the district court stated, "To the extent

[Taxpayer] claims the valuation is incorrect merely because it uses market rates rather than the [P]roperty's actual vacancy and expense rates, the [district c]ourt rejects the argument."

{12}   Taxpayer contends it overcame the presumption of correctness when it applied the income method of appraisal to the Property, utilizing the actual income and expenses from the Property to derive a value different from the Assessor's and the Assessor failed to introduce evidence showing Taxpayer did not use a generally accepted appraisal technique in arriving at that different value. The Assessor responds that because the record contains evidence supporting its valuation of the property, the Board's finding below should remain undisturbed.

{13}   The standard to overcome the presumption of correctness, however, does not require a taxpayer to prove that the Assessor's valuation is not supported by the evidence, as the Assessor contends. Nor is it to present evidence which is more reliable than the Assessor's, as the Board intimated. Instead, to overcome the presumption of correctness, a taxpayer need only present evidence tending to dispute the valuation of the Assessor. *See San Pedro I,* 2017-NMCA-008, ¶ 22.

{14}   In *San Pedro I*, we considered whether Taxpayer presented sufficient evidence to overcome the statutory presumption of correctness when it "proposed a market value based upon its own application of the income method of valuation." *Id.* ¶ 22. Noting that "[Taxpayer's] application of the income method of valuation

9

[using actual expenses] differs from that advocated by the Assessor," and that the Assessor did not claim that Taxpayer's methodology was not a generally accepted appraisal technique, we concluded that Taxpayer's evidence of value disputed the factual correctness of the Assessor's method of valuation. *Id.* Thus, Taxpayer overcame the statutory presumption of correctness and "shifted the burden of proof to the Assessor to prove that his or her method of valuation utilized a generally accepted appraisal technique." *Id.* (alteration, internal quotation marks, and citation omitted).

{15} At the hearing before the Board that gave rise to this appeal, Taxpayer again presented evidence using actual expenses to calculate the value of the Property applying the income method of valuation, with the result differing from that advocated by the Assessor, just as it had in *San Pedro I*. Once again, the Assessor did not claim Taxpayer's approach was not a generally accepted appraisal technique. As was the case in *San Pedro I*, Taxpayer's evidence of differing value "tends to dispute the factual correctness of the method of valuation." *Id.* ( alterations, internal quotation marks, and citation omitted.) "[T]he burden of proof [therefore] shifted to the Assessor to prove that her method of valuation utilized a generally accepted appraisal technique." *Id.* (alteration, internal quotation marks, and citation omitted).

**The Assessor Failed to Provide Substantial Evidence That She Used a Generally Accepted Appraisal Technique.**

10

{16}     We next turn to the issue of whether substantial evidence exists to support the Board's conclusion that the Assessor used a generally accepted appraisal technique in her application of the income method to value the Property. *See id.* ¶¶ 23, 25. Initially, we note that the Board found that Taxpayer did not show that the Assessor failed to use generally accepted appraisal techniques, implicitly concluding that the Assessor's appraisal techniques were, in fact, generally accepted.

{17}     Taxpayer raises three specific objections to challenge the Board's implicit finding. First, Taxpayer argues that the Assessor improperly imposed a flat percentage expense limit in calculating the value of the Property. Second, Taxpayer contends that the Assessor's use of market data for five unidentified properties to calculate the applicable expense rate violated his right to a fair hearing and therefore, due process rights. Third, Taxpayer claims that the Board's findings that the Assessor used a generally accepted appraisal technique was not supported by substantial evidence because it was based exclusively on hearsay and did not include evidence that the income and expense information relied upon by the Assessor were for properties that were comparable to Taxpayer's Property. At the root of all three of Taxpayer's arguments is his objection to the Assessor's use of five unidentified properties to calculate the expense rate to be used in the valuation of the Property. "Whether an appraisal technique is 'generally accepted'

11

is a question of fact." *Id.* ¶ 20. We defer to the Board's factual determinations where they are supported by substantial evidence. *See El Castillo Ret. Residences v. Martinez*, 2017-NMSC-026, ¶ 21, 401 P.3d 751.

**{18}** In applying the income method of valuation to value Taxpayer's Property, the Assessor used a combination of market and actual data. Because Taxpayer's argument on appeal focuses on the information relied upon by the Assessor to calculate the expense rate component of the Assessor's income method valuation, we begin our analysis there.

**{19}** At the hearing before the Board, the Assessor presented a pro forma explaining her calculation of the value of the Property using the income approach. The pro forma notes that the Assessor applied a forty-five percent expense rate[1] in arriving at a valuation of $923,800. Juanita Chavez, an employee of the Assessor, testified that to determine the appropriate expense rate to calculate the Property's value, the Assessor compiled information related to expense rates for other office buildings in the area and arrived at a forty-one percent expense rate, which she increased to forty-five percent for purposes of calculating the Property's value. The expense information contains five entries listing two properties on San Pedro Drive, two properties on Uptown Boulevard, and one property on Prospect. The

---

[1] In reviewing the Assessor's calculations, we note, as the district court did, that the amount of operation expenses set out in the Assessor's pro forma used to calculate the Property's value is actually forty-eight percent of the effective gross income, rather than the forty-five percent noted.

12

Assessor testified that the expense rate information she used was provided to the Assessor's office by other taxpayers and was for properties located in the same neighborhood designation as Taxpayer's Property. Ms. Chavez explained that the five properties she used to calculate the expense rate were all office buildings, were all properties offering full-service leases, and were all of the office buildings in the same neighborhood whose information was available to her. The expense rates shown are for the years 2011, 2012, and 2013 and range from twenty-five percent of effective gross income to fifty-nine percent of effective gross income. It is unclear whether the entries are for five different properties or just three, as the two Uptown Boulevard properties and two San Pedro Drive properties show expense rates for different years, allowing for the possibility that the Assessor's information shows the expense rate for the same properties over different time periods.

{20}  To rebut the information provided by the Assessor, Taxpayer provided testimony from realtor, Ken Shaffer, and from appraiser, Ron Alfred. When asked for his expert opinion on the market expense rate for office space similar in age to the Property, Alfred presented two data sheets for properties he contended were similar. The first property, located on Louisiana Boulevard, was quickly discounted because it was subject to triple-net leases, requiring tenants to pay the cost of most property expenses. Alfred, however, also pointed to a building located

13

in downtown Albuquerque, which he conceded was not located in the same area as the Property, but was newer in effective age and similar in construction type and type of lease. The downtown property, Alfred testified, had an expense rate of fifty-nine percent of effective gross income.

{21}    Taxpayer also called Ken Shaffer, a commercial realtor, to testify on his behalf. Shaffer testified that commercial realtors generally develop an APOD for a property in order to bring it to market to sell. Generally, his APOD contains all expenses usually connected with an office building. Use of an APOD, he testified, is a generally accepted appraisal technique to develop the net operating income of a property relative to the income approach.

{22}    Addressing the Assessor's information, Shaffer testified that expense rate information averaged from five properties is not statistically reliable, and the Assessor should have used at least thirty properties. Explaining the considerations at play in evaluating property values and expense rates, Shaffer testified that Class C office properties, such as Taxpayer's Property, face the biggest challenge in the existing market, with owners frequently having to offer a period of free rent, significant tenant improvements, and a short lease term. Further, Shaffer noted that to determine whether expenses are "ordinary and necessary," as required by the regulation, they must be set out by line-item in order to be properly reviewed. Finally, Shaffer explained that expense rates will differ between commercial

14

properties and it was necessary to consider the property itself, stating as one such example, "You have a lot of common area and trees to take care of, that's going to give you higher expenses because you have a lot more land to take care of."

{23} Considering the evidence that was presented, we cannot say that, under the circumstances of this case, the Board's factual determinations are supported by substantial evidence. *See id*. Just as we found that the Assessor failed to provide sufficient evidence that the expense rates on which she relied applied to Taxpayer's office building in *San Pedro I*, we find similar shortfalls here. *See* 2017-NMCA-008, ¶ 25. We are unable to determine from the evidence presented by the Assessor whether the properties upon which she relied to arrive at her expense rate were of the property type of Taxpayer's Property. *See id.* (noting that without data showing that forty-five percent is appropriate for the property type at issue, we cannot conclude the assessor used generally accepted appraisal techniques); *see also* Edith J. Friedman, *Encyclopedia of Real Estate Appraising*, at 381 (3d ed. 1978) (stating that "[t]he cost of operating an office building varies with its age, condition in which it has been maintained, size, shape, height, mechanical and other equipment, and the services provided by the landlord"). Shaffer testified that Class C properties such as Taxpayer's face unique challenges, requiring the owners of those properties to incur expenses that are not applicable to owners of other office buildings. Absent data showing that the five properties on

15

which the Assessor relied to arrive at her forty-five percent expense rate are either similar to Taxpayer's Property in those qualities that affect the operating expenses of an office building or that the Assessor adjusted the expense rate to account for the lack of similarity, we cannot conclude that the Assessor's valuation was conducted using generally accepted appraisal techniques.

{24} We understand that the Assessor is subject to certain statutory constraints that limit her ability to disclose information related to the Property. *See* § 7-38-19(E) (requiring information regarding income and expenses of specific property may only be released as authorized by Section 7-38-4). Nonetheless, the Assessor is permitted to release information if it is to be used in a way that does not identify the property owner. Section 7-38-4(A)(5). Nothing in the statute prohibits the assessor from testifying about the itemized expenses, age, size, and condition of comparable properties on which the Assessor relies, as well as the services provided by the landlords for those properties. *See Encyclopedia of Real Estate Appraising*, *supra*, at 381. Nonetheless, the Assessor did not provide the Board with that information. We find that, on whole record review, substantial evidence does not exist to support the conclusion that the Assessor used generally accepted accounting principles when she valued Taxpayer's Property.

**CONCLUSION**

{25} We therefore reverse the district court's order and remand the matter to the district court with instructions to vacate the Board's decision and remand the matter to the Board for further proceedings in accordance with this decision.

{26} **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**KRISTINA BOGARDUS, Judge**